**ACTION ON SMOKING AND HEALTH, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

Nos. 79–1044, 79–1095, 79–1754 and 81–2023.

United States Court of Appeals, District of Columbia Circuit.

Order Filed June 30, 1983.

Printed Opinion Issued Aug. 5, 1983.

As Amended Aug. 5, 1983.

Before WRIGHT and MIKVA, Circuit Judges and BAZELON, Senior Circuit Judge.

## ORDER

PER CURIAM.

For the reasons set forth in the attached memorandum, petitioner's motion for emergency relief is granted. That portion of ER–1245A that revokes the "unreasonably burdened" language is vacated.

We further order the CAB to republish the "unreasonably burdened" provision of ER–1091 until such time as those provisions may be amended or revoked by proper rule-making made after new notice and comment proceedings in compliance with the requirements of section 4(b), (c) of the Administrative Procedure Act, 5 U.S.C. § 553(b), (c) (1976).

## MEMORANDUM

On January 28, 1983, this court entered its opinion in *Action on Smoking and Health [ASH] v. Civil Aeronautics Board,* 699 F.2d 1209 (D.C.Cir.1983).[1] In that case, this court examined, among other issues, a certain portion of ER–1245 that purported to rescind three CAB rules provided in ER–1091 for the protection of non-smokers. The court determined that, because of CAB's failure to provide an adequate "basis and purpose statement" to justify these rescissions, that portion of ER–1245 had been promulgated in violation of section 4(c) of the Administrative Procedure Act.

■ As a result, the opinion clearly and unequivocally *vacated* the offending portion of ER–1245. To "vacate," as the parties should well know, means "to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside." 91 C.J.S. *Vacate* (1955); *see Stewart v. Oneal,* 237 F. 897, 906 (6th Cir.1916). Thus, by vacating or rescinding the recissions proposed by ER–1245, the judgment of this court had the effect of reinstating the rules previously in force, *i.e.,* ER–1091, a fact which the CAB appears to concede, *see* CAB Case Mem. No. 069–L (May 13, 1983) ("the three regulations that the Court of Appeals had reinstated") ("the third reinstated regulation would still be revoked").

**1.** To summarize briefly the factual background which is set out in greater detail in this court's previous opinion in this action, 699 F.2d at 1211–12:

In 1979, CAB promulgated ER–1091 providing three new protections for nonsmokers. The first two of these provisions required special segregation of cigar and pipe smokers and prohibited all smoking when ventilation systems are not fully functioning. The third, at issue in this case, specified that:

Carriers shall ensure that non-smoking passengers are not unreasonably burdened by breathing smoke and to that end shall provide at a minimum:

\* \* \* \* \* \*

(e) Special provisions to ensure that if a no-smoking section is placed between smoking sections, the non-smoking passengers are not unreasonably burdened.

14 C.F.R. § 252.2(e) (1981).

On September 2, 1981, the CAB adopted ER–1245, revoking these three protections. In *ASH,* we found that ER–1245 had been improperly promulgated due to its lack of an adequate statement of basis and purpose; therefore, we vacated that portion of ER–1245 that attempted to revoke the protections afforded by ER–1091. *See* 699 F.2d at 1217, 1219.

At a meeting on April 20, 1983, the Board adopted staff proposals again revoking all three provisions without reopening notice and comment proceedings. *See* CAB Case Mem. No. 069J (April 15, 1983) (not yet published or effective). In response to a request by ASH for a stay of that decision, the Board decided to retain in force the cigar and pipe and ventilation requirements, pending notice and comment on renewed proposals to revoke these provisions. *See* CAB Order No. 83–5–101 at 2–3 (May 19, 1983). In the same order, however, the Board again decided to revoke the "unreasonably burdened" language without new notice and comment. *See id.* at 3–4. Pursuant to that decision, the Board adopted and published ER–1245A revoking the "unreasonably burdened" language without new notice and comment and republishing the cigar and pipe and ventilation requirements pending further agency action. *See* Smoking Aboard Aircraft, 48 Fed.Reg. 24,866, 24,867–88 (1983) (effective July 3, 1983) (to be codified at 14 C.F.R. pt. 252). In this action, ASH seeks emergency relief staying the effect of ER–1245A with respect to the revocation of the "unreasonably burdened" language.

Because the effect of this court's judgment in *ASH v. CAB* was to reinstate the protections of ER–1091, they cannot again be revoked without new rulemaking in accordance with the provisions of section 4 of the Administrative Procedure Act. *See* 5 U.S.C. § 553 (1976). The APA requires agencies engaging in rulemaking to publish notice of the proposed rule and rulemaking proceedings in the *Federal Register* and to afford all interested persons an opportunity to participate in the rulemaking process. *See id.* at § 553(b), (c). Despite this requirement, CAB, without providing new opportunities for notice and comment, has elected to publish a "new" rule, again revoking one of the protections accorded by ER–1091. *See* Smoking Aboard Aircraft, 48 Fed.Reg. 24,866 (1983) (to be codified at 14 C.F.R. pt. 252) (adopted May 19, 1983; effective July 3, 1983). This "new" rule purports to provide, in response to this court's decision in *ASH,* "further explanation for its earlier decision . . . not to include vague language in its smoking rule prohibiting unreasonable burdens on nonsmokers from breathing tobacco smoke." *Id.* at 24,866.

CAB attempts to justify its refusal to engage in renewed notice and comment procedures by arguing that, because the court invalidated ER–1245 due to its inadequate explanation of basis and purpose, further explanation, as provided in the "new" rule, should be all that is necessary to remedy the earlier deficiency. *See* CAB Order No. 83–5–101 (May 19, 1983). In support of this argument, CAB relies heavily upon the language of *Williams v. Washington Metropolitan Area Transit Comm'n,* 415 F.2d 922, 939–40 (D.C.Cir.1968) (*en banc*), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969):

> [W]here an agency action must be set aside as invalid, but the agency is still legally free to pursue a valid course of action, a reviewing court will ordinarily remand to enable the agency to enter a new order after remedying the defects that vitiated the original action.

■ However, *Williams* does not address the steps an agency must take to enter a valid new order to remedy defects in an earlier vacated action.[2] An agency

---

**2.** Indeed, among the complaints of petitioners in *Williams* was the charge that the agency had entered its new order "without any notice or hearing specifically related to that purpose." 415 F.2d at 927 n. 22. Because the court found that the agency's new order had still failed to make "the investigation and the resolutions essential to a legitimate exercise of its authority . . .," *id.* at 938–39, and because the agency lacked authority to fix rates retroactively, *see id.* at 940–41, the court never reached the notice and hearing issue, *see id.* at 927 n. 22.

The other authorities upon which the CAB relies are equally inapposite. *City of Cleveland v. FPC,* 525 F.2d 845 (D.C.Cir.1976), involved a utility ratemaking litigation in which the FPC's determination was remanded for failure to resolve properly a customer's claim that the rate schedule adopted violated a preexisting agreement between the parties. The case was remanded to the agency for findings of fact and a resolution of that single issue. No conflict with the requirements of the Administrative Procedure Act were triggered by such a remand. *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973), and *City Federal Savings and Loan Ass'n v. Federal Home Loan Bank Bd.,* 600 F.2d 681 (7th Cir. 1979), also deal with remands of adjudications in which *post hoc* explanations of agency ac-

tions do not collide with the explicit requirements of section 4 of the Administrative Procedure Act. As the Court noted in *Camp,* "neither the National Bank Act nor the APA requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking authorities." 411 U.S. at 140–41, 93 S.Ct. at 1243. Consequently, the court of appeals in *Camp* would not have been authorized to require the Comptroller to conduct new hearings, much less to require the district court to conduct a trial *de novo. See id.* at 140–43. *City Federal* arose in an identical posture. *See* 600 F.2d at 689 ("Neither the HOLA nor the APA requires the Board to hold an adjudicatory hearing followed by formal findings of fact and conclusions of law."). Where, as in *Camp* and *City Federal,* the agency's explanation is required to be responsive to the purposes of the enabling statute, *see* 600 F.2d at 689, rather than to a record developed through mandatory hearings or public comments, *post hoc* explanations, while undesirable, are not fatal. In contrast, under section 4 of the Administrative Procedure Act, "[t]he basis and purpose statement is inextricably intertwined with the receipt of comments." *Rodway v. United States Dep't of Agriculture,* 514 F.2d 809, 817 (D.C. Cir.1975).

cannot remedy a deficiency in one regulation by promulgating a new rule, equally defective for the same [3] or other reasons.

■ This court did not remand the invalid portion of ER–1245 to the CAB for further explanation or for any other agency action. Our failure to do so was no accident. The Administrative Procedure Act requires the agency to *"incorporate in the rules adopted a concise general statement of their basis and purpose." See* 5 U.S.C. § 553(c) (1976) (emphasis supplied). This language contemplates that the basis and purpose statement will *accompany* publication of a rule, *see American Standard, Inc. v. United States,* 602 F.2d 256, 268 (Ct.Cl. 1979), not follow the rule long after it has been published. As a result, courts have repeatedly held that *post hoc* rationalizations "are unacceptable substitutions for a *contemporaneous* basis and purpose statement." *Rodway v. United States Dep't of Agriculture,* 514 F.2d 809, 817 (D.C.Cir. 1975) (emphasis supplied); *accord Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Burlington Truck Lines v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *SEC v. Chenery,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (*Chenery I*); *SEC v. Chenery,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1946) (*Chenery II*); *Tabor v. Joint Bd. For Enrollment of Actu-*

*aries,* 566 F.2d 705, 709–12 (D.C.Cir.1977); *KIRO, Inc. v. FCC,* 545 F.2d 204, 208 (D.C. Cir.1976).

Although, as this court has previously noted, a basis and purpose statement need not be published "at precisely the same moment as the regulations," *see Tabor,* 566 F.2d at 711 n. 14, "[t]he enquiry must be whether the rules and statement are published close enough together in time so that there is no doubt that the statement accompanies, rather than rationalizes the rules," *id.* There can be little doubt in this case that the basis and purpose statement adopted on May 19, 1983 and published on June 3, 1983, *see* 48 Fed.Reg. 24,866 (1983), does not "accompany" ER–1245, a rule that was adopted on September 2, 1981, and published September 16, 1981, *see* 46 Fed.Reg. 45,934 (1981).

In a transparent attempt to circumvent the problem of *post hoc* rationalization, the CAB purports to promulgate a "new" rule, ER–1245A, supplying the statement of basis and purpose that ER–1245 lacked and revoking one of the same provisions that ER–1245 attempted unsuccessfully to revoke. *See* 48 Fed.Reg. at 24,866. However, the CAB has not conducted a new notice and comment rulemaking proceeding but has chosen instead to rely on the record developed with respect to the old rule, ER–1245. *See* CAB Order No. 83–5–101 (May 19, 1983).

---

Finally, it should be noted that a remand may be more appropriate where, as in *Camp,* "there was contemporaneous explanation of the agency decision. The explanation may have been curt, but it surely indicated the determinative reason for the final action taken . . . ." The agency's response on remand in such an instance is not a wholly *post hoc* rationalization of its earlier action, but merely elaborates, fills in interstices, or takes account of isolated neglected issues. In contrast, in this case this court found the agency's explanation to be: palpably inadequate. The agency offers *no* reasoning to support its conclusion that the matters covered by the rescinded provisions are better "left to carrier discretion." We are told that the decision was made "[a]fter considering the outstanding proposals," yet *no* evidence of that consideration is given. To accept the Board's action would render judicial review of informal rules meaningless.

699 F.2d at 1217 (emphasis supplied). When the required explanation of the agency's action is totally absent, or "palpably inadequate," it is difficult to see how a subsequent explanation by the agency on remand could be characterized as anything other than a wholly *post hoc* rationalization.

3. ASH argues that the basis and purpose statement of the "new" rule still provides insufficient explanation of the agency's decision and reflects inadequate consideration of alternatives to revocation of the original rule. *See* Petitioner's Motion for Emergency Relief at 24–29, 31–33 (June 17, 1983). Because of our disposition of this motion on other procedural grounds, we do not reach the merits of the CAB's new explanation of the basis and purpose of the revocation.

■ The agency cannot have its proverbial cake and eat it too. If ER–1245A does nothing more than to supply the explanation of basis and purpose absent in ER–1245, then ER–1245A is invalid as a *post hoc* rationalization. If, on the other hand, ER–1245A is in fact a *new* rule, then it must be promulgated in accordance with the rulemaking procedures demanded by section 4 of the Administrative Procedure Act, including its notice and comment requirements. *See* 5 U.S.C. § 553(b), (c) (1976).

■ Although the Administrative Procedure Act does not establish a "useful life" for a notice and comment record, clearly the life of such a record is not infinite. By the CAB's own admission, adoption of ER–1245 "was the *culmination* of a rulemaking proceeding that began in 1976 . . . ." 48 Fed. Reg. at 24,866. If one rulemaking proceeding has culminated and another has begun, then new notice and comment procedures are required.[4] *See Rodway v. United States Dep't of Agriculture,* 514 F.2d 809, 817 (D.C.Cir.1975) ("whole record" in a rulemaking case is "comprised of comments received, hearings held, if any, and the basis and purpose statement").

■ We do not hold that an agency must start from scratch in *every* situation in which rules are vacated or remanded due to the absence or inadequacy of their statement of basis and purpose. An exception is provided by the Administrative Procedure Act itself "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B) (1976). However, this exception does not apply to the present case.

■ First, ER–1245A contains not a single word of explanation as to why new

notice and comment proceedings are impracticable, unnecessary, or contrary to the public interest. *See* 48 Fed.Reg. 24,866 (1983). CAB Order No. 83–5–101 (May 19, 1983) contains an extended discussion of CAB's reasons for believing it is not legally required to engage in new rulemaking proceedings. However, even if a separate order satisfied the requirements of the section 4(c) exception (and it does not), the only language that suggests a *reason* for a determination that notice and comment is *unnecessary* is the Board's observation that "the applicable notice of proposed rulemaking and record are still outstanding . . . . Where we have decided to explain and affirm our earlier decisions . . . it is because we are satisfied with the present record and doubt that further comments would produce any additional light." *Id.* at 2–3. CAB may not avoid the notice and comment requirements of section 4 simply because the Board questions the utility of those requirements. This court has repeatedly held that exceptions to the notice and comment requirements will be narrowly construed and only reluctantly countenanced. *See, e.g., American Federation of Gov't Emp. v. Block,* 655 F.2d 1153, 1156 (D.C.Cir. 1981); *New Jersey Dep't of Environmental Protection v. EPA,* 626 F.2d 1038, 1045 (D.C.Cir.1980); *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, 1082 (D.C. Cir.1978). Rather, the exceptions should be invoked only in emergency situations when delay would do real harm. *See Buschman v. Schweiker,* 676 F.2d 352, 357 (9th Cir. 1982). Bald assertions that the agency does not believe comments would be useful cannot create good cause to forgo notice and comment procedures. *See Mobil Oil Corp. v. Department of Energy,* 610 F.2d 796, 803 (Temp.Em.Ct.App.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). To hold otherwise would permit the exceptions to carve the heart out of the statute. *See Housing Authority of City of*

---

**4.** As the agency itself acknowledges, "[o]ne notice for each decision is all that is required by the APA." Respondent's Opposition to Motion

for Emergency Relief and Stay at 12 (June 27, 1983). If ER–1245A is truly a new decision, then new notice and comment are required.

*Omaha v. United States Housing Authority,* 468 F.2d 1, 8 (8th Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973).

◼ Second, a finding of good cause for waiver of the notice and comment requirements cannot be supported under the facts of this case. Notice and comment are clearly not impracticable. The CAB is providing a comment period with respect to its renewed proposals to revoke two other protections, requiring special segregation of cigar and pipe smokers and a ban on smoking when aircraft ventilation systems are not fully functioning, which the agency attempted to revoke in ER–1245. *See* 48 Fed.Reg. at 24,868. The agency could readily incorporate a proposal to revoke the "unreasonably burdened" language in the same notice and comment proceedings. Nor does the mere presence of a prior notice and comment record on the smoking regulations render the solicitation of new comments unnecessary. The comments solicited under ER–1245 are now between two and four years old.[5] It cannot be presumed that no new evidence relevant to the problem of drifting smoke on aircraft could have developed in that interim. Indeed, CAB's new statement of basis and purpose relies in part on such data—the level of complaints received during the period in which the regulation was eliminated. *See* 48 Fed.Reg. at 24,867. Although the agency is entitled to look outside the record in formulating rules and to draw upon its own regulatory experience and expertise, *see*

*Pacific Coast European Conference v. United States,* 350 F.2d 197, 205 (9th Cir.), *cert. denied,* 382 U.S. 958, 86 S.Ct. 433, 15 L.Ed.2d 362 (1965); *American Medical Ass'n v. Mathews,* 429 F.Supp. 1179, 1205 (N.D.Ill.1977); *Flying Tiger Line, Inc. v. Boyd,* 244 F.Supp. 889, 892 (D.D.C.1965), the existence of new evidence supporting the agency's decision strongly suggests the possibility of other new evidence, *e.g.,* explanations of the complaint levels, *see* Petitioner's Motion for Emergency Relief at 22–24 (June 17, 1983), which the notice and comment procedure might well bring to the agency's attention. Moreover, ASH has suggested information that it might bring to the Board's attention in a notice and comment proceeding; for example, various interpretations of the "unreasonably burdened" language, designed to minimize the problems of vagueness and unenforceability which concern the Board, could have been offered.[6] *See* Petitioner's Motion for Emergency Relief at 27 (June 17, 1983); *see also id.* at 28–30 (new scientific evidence).

◼ Finally, the CAB's conclusion that the "unreasonably burdened" language "merely serves to create confusion over exactly which airline practices are prohibited," 48 Fed.Reg. at 24,867; *see also* CAB Order No. 83–5–101 at 4 (May 19, 1983), does not suffice to demonstrate that the opportunity for notice and comment would be contrary to the public interest, *see* Respondent's Opposition to Motion for Emergency Relief and Stay at 26 (June 27, 1983). The public interest exception to notice and

---

5. CAB suggests that the "unreasonably burdened" language was initially intended to deal with the problem of "sandwiching" nonsmoking sections between two or more smoking sections. *See* Respondent's Opposition to Motion for Emergency Relief and Stay at 16 (June 27, 1983). The comment period for EDR–377, proposing amendment of EDR–1091 to deal with "sandwiching" closed on September 19, 1979. *See* 44 Fed.Reg. 29,486 (1979). Comments for a broader proposal, EDR–420, which suggested the alternatives of totally banning smoking on airplanes or totally eliminating CAB regulation of smoking, were due by April 13, 1981. *See* 46 Fed.Reg. 11,827 (1981).

6. The fact that ASH may have had other opportunities to bring some or all of this information to the attention of the Board is of minimal relevance since the onus is on the Board to establish that notice and comment is unnecessary. *See Joseph v. United States Civil Serv. Comm'n,* 554 F.2d 1140, 1154 n. 27 (D.C.Cir. 1977); *Mobil Oil Corp. v. Department of Energy,* 610 F.2d 796, 802–03 (Temp.Em.Ct.App. 1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

comment requirements contemplates real harm to the public, not mere inconvenience to the agency. *See United States Steel Corp. v. EPA,* 595 F.2d 207, 214 (5th Cir. 1979). In contrast, the agency's own rationale for revocation of the rule evidences the absence of real harm; the agency argues that the effects of adoption and elimination of the rule have been indistinguishable. *See* 48 Fed.Reg. at 24,867–68.

CONCLUSION

■ For the reasons described above, we find that the promulgation of ER–1245A failed to comply with the procedural requirements of section 4 of the Administrative Procedure Act. We cannot dispute the CAB's contention that this court's "role is not to substitute its judgment for that of the Board" on the merits of its smoking rules. Respondent's Opposition to Motion for Emergency Relief and Stay at 15 (June 27, 1983); ·see *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). On the other hand, an agency's repeated technical noncompliance with the requirements of the Act will not be tolerated. *See National Helium Corp. v. FEA,* 569 F.2d 1137, 1144 (Temp.Em.Ct.App.1977). Accordingly, we vacate ER–1245A and order the agency to republish the "unreasonably burdened" language of ER–1091 until such provision may be amended or revoked by proper rulemaking proceedings made after new notice and comment procedures in compliance with the requirements of the Act.