**TEXAS FOOD INDUSTRY ASSOCIATION; National–American Wholesale Grocers' Association/International Foodservice Distributors Association; and, National Grocers Association**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE.**

Civ. No. A–93–CA–586 JN.

United States District Court, W.D. Texas, Austin Division.

Oct. 14, 1993.

David L. Orr, Johnson & Gibbs, Austin, TX, John R. Fleder, David Durkin, Olsson, Frank and Weeda, Washington, DC, for plaintiffs.

Karen Stewart, Thomas Millet, Dennis G. Linder, Dept. of Justice Civ. Div., Washington, DC, Roxanne McKee, U.S. Attorney's Office, Austin, TX, for defendant.

*ORDER and OPINION*

NOWLIN, District Judge.

Before the Court is the Plaintiffs' Application for Preliminary Injunction, filed on September 23, 1993. On October 6, 1993, this Court held an evidentiary hearing to consider this motion. Having reviewed and consid-

ered this motion, the applicable law, the evidence presented, the pleadings and briefs, and the arguments of counsel, this Court is of the opinion that this motion is meritorious and should be GRANTED.

## BACKGROUND FACTS

The Plaintiffs are: the Texas Food Industry Association; the National Wholesale Grocers' Association/International Foodservice Distributors Association; and the National Grocers Association. The Defendant is the United States Department of Agriculture [the "USDA"].

On August 16, 1993, the United States Department of Agriculture promulgated an interim final rule that imposes new labeling requirements for uncooked and partially cooked meat and poultry items. The USDA established October 16, 1993, as the effective date for this new rule.

The Plaintiffs seek a preliminary injunction to prohibit the application of this emergency rule because they assert that the rule is invalid as improperly promulgated. The Plaintiffs assert that the Defendant agency failed to comply with the Administrative Procedure Act.

## FINDING OF FACTS AND CONCLUSIONS OF LAW

■ The Fifth Circuit requires that the movant for a preliminary injunction has the burden of proving four elements:

(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest.

*Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir.1991) (upholding the issuance of a preliminary injunction in a copyright case); *see also Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir.1985). The Plaintiff had the burden to show these four factors at the hearing held before this Court. "The decision to grant or deny a preliminary injunction lies within the discretion of the district court." *Lakedreams,* 932 F.2d at 1107.

If a district court grants or denies a preliminary injunction, the Fifth Circuit will only reverse such a decision upon the showing of abuse of discretion by the district court. *Id.*

■ Whether the Plaintiffs have a substantial likelihood of success on the merits depends upon the legal standards established under the Administrative Procedure Act. If the USDA appears to have complied with the APA, then the Plaintiffs would not have a substantial likelihood of success. However, if the record demonstrates that the USDA clearly failed to comply with the APA, then the Plaintiffs would have demonstrated a substantial likelihood of success on the merits. For the reasons discussed in this opinion, the Plaintiffs have demonstrated a substantial likelihood of success on the merits in their favor for the purposes of obtaining a preliminary injunction.

■ In the Administrative Procedure Act [the "APA"], the statute provides for a "good cause" exception to the normal "notice and comment" rulemaking process. The statute provides:

Except when notice or hearing is required by statute, this subsection does not apply—

.    .    .    .    .

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(B). Under this statutory provision, "notice and public procedures need not be followed when an agency finds that they are impracticable, unnecessary, or contrary to the public interest." *United States v. Garner,* 767 F.2d 104, 120 (5th Cir.1985). This exception is construed narrowly so as not to provide agencies an "escape clause" from the requirements established by Congress. *Id.* The Fifth Circuit has explained the "good cause" exception in the APA:

The good cause exception of section 553(b)(B) is designed to provide agencies with a safety valve when delay would do

real harm; it does not extend to agencies the same prerogative of silence usually reserved to legislatures.

*See United States v. Garner*, 767 F.2d 104, 121 (5th Cir.1985) (citation omitted). Under this statutory provision, "notice and public procedures need not be followed when an agency finds that they are impracticable, unnecessary, or contrary to the public interest." The Fifth Circuit has concluded that this exception:

> is an important safety valve to be used where delay would do real harm. **It should not be used, however, to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them.**

*United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207, 214 (5th Cir.1979).

Without the issuance of a proposed rule or any other opportunity for public comment, the USDA provided public notice of the USDA's disputed promulgation of the interim rule in the Federal Register on August 16, 1993. *See* 58 Fed.Reg. 43478 (August 16, 1993). This "interim final rule" mandates that all uncooked and partially cooked packages of meat and poultry products will be required to contain new labels relating to the safe handling and processing of such items, primarily to combat the disease caused by *E. coli 0157:H7* ("E.coli"). *Id.* Though it allowed for post-promulgation comments, this new rule was published in the Rules and Regulations section of the Federal Register and not in the Proposed Rules section.

The "Summary" section of this notice does not state a reason for any good cause exception to the normal requirements under the APA. *See id.*[1] In the "Risk Analysis" section, the USDA's notice states:

The gravity of many cases of illness resulting from E.coli 0157:H7 and the continuing evidence of consumers undercooking hamburgers creates a public health emergency that is not reflected in the numbers of Table 1. Recent reports of morbidity and mortality indicate a level of risk that has led the Department to issue this rule on an interim final basis.

*Id.* at 43478. However, the geographically isolated outbreak of E.coli illnesses that occurred in the Northwest in January of 1993, over 8 months before this rule was promulgated, was not the result of consumer mishandling or undercooking. Instead, that outbreak resulted from mishandling and undercooking by a fast food chain. The August 16th notice also provided for public comment concerning the new interim final rule. *Id.* at 43480–43481

As well as the opinions of the USDA mentioned in the "Risk Analysis" section, the notice of the interim final rule provides empirical data for support for the new rule in the "Background" and "New Policy Direction" sections. *See* 58 Fed.Reg. at 43481–43482. In these sections, the USDA refers to a court action from 1972 regarding the need for public education concerning proper food handling and cooking. *Id.* at 43481. Apparently, the USDA, through the FSIS, has undertaken significant actions to educate the public and businesses since the 1972 court decision. *Id.* Also, the FSIS has "permitted" voluntary labeling of poultry products since 1987. *Id.*[2] The USDA then discusses a 1972 nationwide study, another study that was published in 1985, and a third study performed in 1990. *Id.* Then, the USDA states that:

> it *has become convinced* of the need for more direct methods of placing food safety information in the hands of consumers.

---

**1.** The Summary Section states in its entirety:
The Food Safety and Inspection Service (FSIS) is amending the Federal meat and poultry products inspection regulations to make safe handling instructions mandatory on all raw meat and poultry product labeling. The handling instructions address safe storage of raw product, prevention of cross-contamination, cooking of raw product, and handling of leftovers. The rule provides additional safeguards to protect consumers from exposure to possible bacterial contamina[n]ts found in raw meat and poultry products. This action is being taken in an effort to reduce the risk of foodborne illness.
58 Fed.Reg. at 43478.

**2.** This Court does note its concern when federal agencies must "permit" businesses to voluntarily exceed what is mandated upon them under the law.

*Thus,* Agency official [sic] *in early January* began to advocate in their speeches and writings that the mandatory safe handling instructions on the labeling of meat and poultry products was a necessary component of a program to combat foodborne illness.

*Id.* at 43481 (emphasis added). This emphasized language indicates that the USDA was convinced before January of 1993 that labeling should be required. The USDA did not propose or attempt to propose any potential rules before August of 1993.

Also, the USDA discussed a court action that occurred in February through May of 1993. *Id.* at 43482. Apparently, the USDA settled this action with an agreement "to publish its *anticipated proposed* regulation by August 15, 1993, to mandate safe handling labeling requirements for raw meat and poultry products." *Id.* (emphasis added). The USDA then stated that it has become aware of nine recent separate outbreaks of E.coli illnesses. *Id.* However, the sources and causes of these "outbreaks" were not confirmed or identified. Also, these incidents do not appear to be "outbreaks" on a wide scale, and fall far short of any epidemic proportions. Further, these incidents were isolated and "separate."

Only after discussing these nine "incidents," the USDA explained:

Under these circumstances, the Department has determined that there is good cause to publish this interim rule without an opportunity for prior public comment. Immediate action is necessary to protect the public health. However, implementation of the interim rule is delayed for 60 days to enable the affected businesses to obtain the required labeling.

We will consider comments that are received within 30 days of publication of this rule in the Federal Register. After the comment period closes, we will publish another document in the Federal Register. It will include a discussion of any comments we receive and any amendments we were making to the rule as a result of the comments.

*Id.* at 43483. If "immediate action" was necessary, the USDA should have implemented, or attempted to implement, the interim rule "immediately."

At the hearing on this action, counsel for the Government stated that under the APA a new rule could be implemented following the usual notice and comment procedures in 60 days. It is disingenuous for the USDA to express the urgent need for an emergency rule and then delay its effective date for 60 days, when the USDA could have followed the standard procedures for rulemaking under the APA within such a time period. If there truly was an epidemic problem or anywhere close to such a problem, the USDA presumably would have required a much shorter period for the effective date of the emergency rule. Further, the USDA has not rebutted the Plaintiffs' showing that an emergency does not exist to require an emergency rule.

■ Discussing a federal agency's argument that the agency's failure to provide notice and comment before promulgating a new rule was "cured" by the agency's acceptance of comments after the effective date, the Fifth Circuit has stated:

The argument mixes notions of mootness, harmless error, and minimal injury to petitioners. While the substantial public health interests involved give these arguments some surface appeal, accepting them would lead in the long run to depriving parties affected by agency action of any way to enforce their § 553 rights to pre-promulgation notice and comment.

*See United States Steel Corp.* at 215. The Fifth Circuit rejected the federal agency's argument that good faith acceptance of "post-promulgation" comments would satisfy the intent of section 553. *See id.* at 214–215. Accordingly, when the APA has been violated by a federal agency, as the USDA did so in this case, post-promulgation notice and comment does not cure any earlier violations of the APA.

Discussing the good cause exception in the APA at 5 U.S.C. § 553(b)(B), a federal circuit court has explained the strict limitations on this exception:

This court has repeatedly held that exceptions to the notice and comment re-

quirements will be narrowly construed and only reluctantly countenanced.... Rather, the exceptions should be invoked only in emergency situations when delay would do real harm.... Bald assertions that the agency does not believe comments would be useful cannot create good cause to forego notice and comment procedures.... To hold otherwise would permit the exceptions to carve the heart out of the statute.

See *Action on Smoking and Health v. Civil Aeronautics Board,* 713 F.2d 795, 800 (D.C.Cir.1983) (citations omitted). "The public interest exception to notice and comment requirements contemplates real harm to the public, not mere inconvenience to the agency." *Id.* at 801–802 (citation omitted). Further, a *federal agency's own* statements concerning the effects of adopting a new rule as "indistinguishable" can also evidence the absence of harm to the public. *See id.* At the time of the issuance of the new rule in this action, the USDA had no reliable nor even a somewhat substantiated estimate on the effectiveness of new labeling requirements as a preventive measure. *See* 58 Fed.Reg. at 43479.

In a decision involving a challenge to the implementation of petroleum products, a federal court stated:

It is axiomatic that a mere recital of good cause does not create good cause. In *Nader v. Sawhill, supra,* [514 F.2d 1064 (Temp.Em.Ct.App.1975) ], the court noted that if the "conclusory statement that normal procedures were not followed because of the need to "provide immediate guidance and information ... constitutes 'good cause' then an exception to the notice requirement would be created that would swallow the rule.

See *Mobil Oil v. Department of Energy,* 610 F.2d 796, 803 (Temp.Em.Ct.App.1979) (citations omitted), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790. In this case, the USDA does state that the new rule is in the public interest and falls within the good cause exception, but the Plaintiffs have demonstrated the contrary. The USDA has not rebutted this demonstration by the Plaintiffs.

In a decision involving rules and regulations for the employment of young children and the effects of pesticides on the children, a federal court has explained:

[G]ood cause to suspend notice and comment must be supported by more that the bare need to have regulations. *Especially in the context of health risks, notice and comment procedures assure the dialogue necessary to the creation of desirable rules.*

*National Association of Farmworkers v. Marshall, Secretary of the Department of Labor,* 628 F.2d 604, 621 (D.C.Cir.1980) (emphasis added). Indeed, when an agency makes an initial attempt to set protective health and safety standards, such initial standards are precisely the type that require "the utmost care in [their] development and exposure to public and expert criticism." *See id.* In the present action, the labeling requirements are indeed related to potential health risks. Following the standard procedures for a new rule of this type is the correct legal course of action and is the most sensible cause of action.

Another federal appeals court explained the legislative intent behind the "public interest" exception in the APA:

Congress's view seems to have been that any time one can expect real interest from the public in the content of the proposed regulations, notice-and-comment rulemaking will not be contrary to the public interest. This is such a case. Not only did plaintiffs show interest in the content of the regulation, but many commentators participated in the final rule-making when given an opportunity,.... Under these circumstances, we cannot conclude that the public interest as conceived in section 553 was served by circumventing section 553's procedures.

*See Levesque v. Block,* 723 F.2d 175, 185 (1st Cir.1983). In the present action, the public response to this rule has far exceeded the response in *Levesque.* The business entities and experts have made numerous comments to the USDA. Acknowledged by the USDA, the effected business entities are indeed concerned about preventing and controlling food-borne illnesses.

■ Further, when a federal agency creates time pressures upon itself as a result of its own lack of immediate action, such conduct further supports a finding that no good cause existed to depart from the standard rulemaking procedures. *See National Association of Farmworkers*, 628 F.2d at 622. Similarly, in this action, the USDA for a number of years, not just months, did not seem to find a need for an emergency rule regarding labeling. The USDA had many available studies, and the USDA did its own selective internal studies and research. Throughout this time period, the USDA could have and should have invited public comment and participation according to the proper procedures. The USDA has failed to demonstrate why some form of expedited rulemaking process could not have been, and was not, undertaken within the normal procedures of the APA.

The USDA's "Beef patties" rule should serve the same purpose at fast food chains and other restaurants as the emergency rule would have served. In the evidence and testimony presented to this Court, the most serious food-borne illness outbreaks appear to have resulted from problems at restaurants and fast food outlets.

In a case involving regulations under the Occupational Safety and Health Act ("OSHA"), the Fifth Circuit has stated that the reasons a federal agency provides at the time it acts must form the basis of the agency's action. *Asbestos Information Ass'n/North America v. Occupational Health and Safety Admin.*, 727 F.2d 415, 425 (5th Cir. 1984). "[T]he validity of an agency's determination must be judged on the basis of the agency's stated reasons for making that determination." *Id.* (quoting from *SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626). The Fifth Circuit concluded that the agency's assessment of the gravity of the risk, estimated saving 80 lives, and of the necessity of an emergency rule were both questionable. *Id.* The circuit court also held the emergency rule to be unenforceable because the agency did not prove that the rule was "necessary" to achieve the desired goals. *Id.* at 426. The court did not rule that the danger was not

grave but did rule that the record failed to support the need for an emergency rule. *Id.* at 427. The Fifth Circuit concluded its opinion by encouraging the agency, if danger was imminent, to complete its proper "notice-and-comment" rulemaking as quickly as possible. *Id.* The Fifth Circuit's rationale in *Asbestos Information Ass'n/North America* is directly applicable to the present controversy before this Court.

In another OSHA decision, the Fifth Circuit reiterated its earlier explanation of the extraordinary powers granted to the Secretary of Health under OSHA that are analogous to the extraordinary powers granted under Section 553(c) of the APA:

> The extraordinary powers granted to the Secretary in Section 6(c) of the Act "should be delicately exercised, and only in those emergency situations which require it."

*See Taylor Diving & Salvage Co. v. United States Department of Labor*, 537 F.2d 819, 820–821 (5th Cir.1976) (quoting from *Florida Peach Grower's Association v. United States Department of Labor*, 489 F.2d 120, 129–130 (5th Cir.1974)).

The Plaintiffs have also demonstrated a substantial threat of irreparable injury to the affected entities if an injunction is not issued. This new rule will annually affect approximately twenty billion packages of meat and poultry products. Such a new regulation will impose significant costs on the affected industry, especially the small business owners; and, consequently, this regulation will impose higher costs to the consumers. The USDA itself has estimated that the new rule will impose compliance costs of between approximately 35 to 75 million dollars. Although the estimated cost per label appears to be small, the estimates do not distinguish between the costs for large affected entities and the very small business owners, who presumably would have much higher costs per label and who also normally have much less ability to absorb and/or pass along costs resulting from ever-increasing government intrusion and regulation. Further, this Court finds that the costs of compliance have been shown to be in the hundreds of millions of dollars, well above the USDA's lower, though still quite significant, estimates.

Additionally, any persons or entities that do not comply with the emergency rule could be subjected to both civil and criminal fines and penalties. Perfectly safe, but improperly labeled products, could be seized and forfeited by the government.

The threatened harm to the movants, the Plaintiffs, overwhelmingly outweighs any damage the injunction might cause to the Defendant. The costs of compliance are enormous. The costs of even unintentional noncompliance could be even greater. Requiring the USDA to follow standard procedures to promulgate a similar rule causes little, if any, harm to the USDA. In fact, such a decision may prevent future problems with rulemaking at the USDA, since the USDA presumably will be more aware of the legal requirements and standards of the APA.

The movants for a preliminary injunction must establish the fourth factor, that the injunction will not disserve the public interest. In this action, the USDA has argued that an injunction will harm the public by preventing the immediate dissemination of proper food handling techniques to the public by means of the new labeling requirements. Based upon the record, this Court cannot make any finding that enjoining the requirement of new labeling requirements until the proper notice and comment rulemaking procedures have been followed would disserve the public interest. Instead, the Plaintiffs have shown that the public interest will not be disserved by the issuance of an injunction.

This Court does also find that enforcing the APA strictly does serve the public interest. The public is served by federal agencies following the guidelines that Congress has established. Some federal agencies are given extraordinary powers but those powers may not be casually exercised. Indeed, those powers are extraordinary primarily because the agencies are only permitted to invoke such powers in truly rare and extraordinary circumstances. Such an extraordinary circumstance has not been presented in this action.

If Congress, within its powers, had mandated new labeling to take effect by a certain date, at a time less than the statutory mini-mum under the APA, a federal agency would probably be able to promulgate an emergency rule to comply with the law as passed by Congress. Congress did not pass any such law in this case. A federal agency does not have power tantamount to that of Congress. The powers of federal agencies are limited and these powers are, and should be, strictly construed.

## CONCLUSION

This Court is in no way attempting to substitute its own judgment for the collective wisdom of the USDA, the interested parties, and the general public regarding effective methods and approaches to combat the problems of food-borne illnesses. In this action, the USDA should do likewise. The USDA has not demonstrated any reason that would justify a departure from the normal rulemaking procedures under the APA. The USDA has not demonstrated the immediate harm or emergency justifying an emergency rule. Therefore, in this action, the USDA cannot substitute its unilateral, unnoticed rule upon the country and the public without permitting the effected parties and the general public to participate in the process.

This Court has been and remains ever-concerned with protecting the public health and safety. However, this Court must apply the laws as enacted by Congress and the President and as interpreted by the judiciary. The precedential authority conclusively demonstrates that the USDA's action in attempting to adopt and implement the emergency rule at issue does not qualify as a good cause exception under the Administrative Procedure Act. This Court encourages all of the interested parties to work together, which is in the best interests of all entities and persons, to remedy problems associated with food-borne illnesses.

ACCORDINGLY IT IS ORDERED that the Plaintiffs' Application for Preliminary Injunction, filed on September 23, 1993 is hereby GRANTED upon the condition that the Plaintiff executes a bond with adequate securities in the amount of One Thousand Dollars ($1000.00), and shall deposit the bond or the cash equivalent into the registry of this Court. Once such a bond or cash equivalent

has been deposited with the Clerk of this Court, this preliminary injunction order shall become effective as set forth herein.

IT IS ORDERED that the Defendant United States Department of Agriculture and any and all of its officers, agents, employees, attorneys, and those in active concert or participation with the Defendant are hereby PRELIMINARILY ENJOINED AND RESTRAINED from enforcing or implementing the USDA's new interim rule on mandatory labeling for meat and poultry products published in the Federal Register on August 16, 1993, or the final rule derived therefrom published in the Federal Register on October 12, 1993, against the Plaintiffs or any other affected entities or individuals until further order by this Court.