United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued May 14, 2001 Decided July 13, 2001 

 No. 00-1334

 Air Transport Association of Canada, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 00-1342

 Societe Air France, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 ---------

 No. 00-1343

 Deutsche Lufthansa A.G. (Lufthansa German Airlines), 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 00-1344

 British Airways Plc, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 00-1345

 LTU Lufttransport-Unternehmen GmbH., 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 ---------

 No. 00-1346

 Qantas Airways Limited, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 00-1347

 Air New Zealand, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 00-1351

 KLM Royal Dutch Airlines, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1170

 Air Transport Association of Canada, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1171

 Air New Zealand, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1172

 British Airways Plc, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1173

 Deutsche Lufthansa A.G. (Lufthansa German Airlines), 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1174

 KLM Royal Dutch Airlines, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1175

 LTU Lufttransport-Unternehmen GmbH., 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1176

 Qantas Airways Limited, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

 No. 01-1177

 Societe Air France, 
 Petitioner

 v.

 Federal Aviation Administration and Jane F. Garvey, 
 Administrator, Federal Aviation Administration, 
 Respondents

On Petitions for Review of an Interim Final Rule 
of the Federal Aviation Administration

 M. Roy Goldberg for Air Transport Association of Canada 
argued the cause for the joint petitioners. Michael Goldman 
for Societe Air France, Sheila C. Cheston for Deutsche Luf-
thansa A.G. (Lufthansa German Airlines), Don H. Hainbach 
for British Airways Plc, Frederick S. Hird, Jr. for LTU 
Lufttransport-Unternehmen GmbH., Moffett B. Roller for 
Qantas Airways Limited, Frederick Robinson for Air New 
Zealand and Paul V. Mifsud for KLM Royal Dutch Airlines 

were on the joint brief for all the petitioners. Robert W. 
Kneisley entered an appearance.

 Robert D. Kamenshine, Attorney, United States Depart-
ment of Justice, argued the cause for the respondents. Rob-
ert S. Greenspan, Attorney, United States Department of 
Justice was on brief.

 Before: Henderson, Tatel and Garland, Circuit Judges.

 Opinion for the court filed by Circuit Judge Henderson.

 Karen LeCraft Henderson, Circuit Judge: The petition-
ers, Air Transport Association of Canada, Societe Air France, 
Deutsche Lufthansa A.G. (Lufthansa German Airlines), Brit-
ish Airways Plc, LTU Lufttransport-Unternehmen GmbH., 
Qantas Airways Limited, Air New Zealand and KLM Royal 
Dutch Airlines, challenge an interim final rule issued by the 
Federal Aviation Administration (FAA) establishing fees for 
certain flights that transit through United States-controlled 
airspace but neither take off from, nor land in, the United 
States (overflights). They argue, inter alia, that the rule 
does not accord with the authorizing statute. Because the 
FAA has failed to explain why the fees it established satisfy 
the statutory requirements, we remand to 
the FAA for further proceedings.

 I.

 The Federal Aviation Reauthorization Act of 1996, Pub. L. 
No. 104-264, s 273, 110 Stat. 3213, 3239-40, codified at 49 
U.S.C. s 45301 (Act), directs the FAA to establish a fee 
schedule and collection process to cover air traffic control and 
related services provided to overflights.1 The Act requires 
that the fees imposed on overflights be directly related to the 
__________
 1 The Act provides in relevant part:

 (a) Schedule of fees.--The Administrator shall establish a 
 schedule of new fees, and a collection process for such fees, for 
 the following services provided by the Administration:
 
 
 (1) Air traffic control and related services provided to 
 aircraft other than military and civilian aircraft of the United 
 
FAA's costs of providing the service rendered to those flights. 
The FAA has twice attempted to establish the fees authorized 
by the Act.

 In 1997 the FAA issued an interim final rule establishing 
the first fee schedule for overflights (1997 Rule). See Fees 
for Air Traffic Services for Certain Flights Through U.S.-
Controlled Airspace, 62 Fed. Reg. 13,496 (Mar. 20, 1997). 
The 1997 Rule explained that the services provided to over-
flights required two types of expenditures: incremental (i.e., 
costs that increased with the quantity of services provided) 
and fixed and common (i.e., costs that remained unchanged 
regardless of the quantity of services provided--for example 
__________
 States government or of a foreign government that neither 
 take off from, nor land in, the United States.
 
 (2) Services (other than air traffic control services) provided 
 to a foreign government or services provided to any entity 
 obtaining services outside the United States, except that the 
 Administrator shall not impose fees in any manner for 
 production-certification related service performed outside the 
 United States pertaining to aeronautical products manufac-
 tured outside the United States; and
 (b) Limitations.--
 (1) Authorization and impact considerations.--In establish-
 ing fees under subsection (a), the Administrator--
 (A) is authorized to recover in fiscal year 1997 
 $100,000,000; and
 (B) shall ensure that each of the fees required by subsec-
 tion (a) is directly related to the Administration's costs of 
 providing the service rendered. Services for which costs may 
 be recovered include the costs of air traffic control, naviga-
 tion, weather services, training and emergency services 
 which are available to facilitate safe transportation over the 
 United States, and other services provided by the Adminis-
 trator or by programs financed by the Administrator to 
 flights that neither take off nor land in the United States.
 
 (2) Publication; comment.--The Administrator shall publish 
 in the Federal Register an initial fee schedule and associated 

the cost of radar installations and computer software--and 
costs that could not be attributed to any particular flight or 
class of flights). See Asiana Airlines v. FAA, 134 F.3d 393, 
395-96, 401 (D.C. Cir. 1998) (describing 1997 Rule). The 
FAA decided to recoup from overflights both types of expen-
ditures. To compute the appropriate amount of fixed and 
common costs that should be allocated to overflights, the FAA 
relied on a methodology called "Ramsey pricing," which dis-
tributed the costs among "classes of users based on the 
elasticity of their demand for services in an effort to minimize 
the effect of the regulation on the behavior of users." Id. at 
396.

 Airlines affected by the fee schedule challenged the 1997 
Rule, contending that the FAA exceeded its statutory author-
ity by computing fees, at least in part, on the value of the 
services to the recipient rather than on costs. We were 
persuaded by the argument. See id. at 401. We explained 
that "[s]tatutory language requiring that 'each' fee be 'direct-
ly related to ... costs of providing the service rendered,' 
expresses a clear congressional intent that fees must be 
established in such a way that each flight pays according to 
the burden associated with servicing that flight," id. at 402, 
and "insofar as the FAA allocated fixed and common costs 
using the Ramsey pricing methodology, its fee structure 
impermissibly included a component based on value to the 
user." Id. at 401. Accordingly, we vacated the 1997 Rule 
and remanded to the FAA for further proceedings.

 In June 2000 the FAA published another interim final rule 
establishing a new schedule of overflight fees (2000 Rule). 
See Fees for FAA Services for Certain Flights, 65 Fed. Reg. 
36002 (June 6, 2000). Effective August 1, 2000, an overflight 
travelling in "enroute" airspace must pay $37.43 per 100 
nautical miles (or portion thereof), while an overflight using 
only "oceanic" airspace must pay $20.16 per 100 nautical miles 
(or portion thereof).2 The 2000 Rule itself does not explain 
__________
 collection process as an interim final rule, pursuant to which 
 public comment will be sought and a final rule issued.
 
 49 U.S.C.A. s 45301(a), (b) (footnote omitted).

 2 The 2000 Rule defines "enroute" airspace as "airspace where 
primarily radar-based air traffic services are provided." 65 Fed. 

how the FAA arrived at the enroute and oceanic rates but 
refers to two record documents that "detail how the fees in 
this rule were determined and calculated." Id. The first 
document is a report by the Arthur Anderson accounting firm 
entitled "Cost Methodology Used to Develop Cost of Enroute 
and Oceanic ATC Services" (Arthur Anderson Report). It 
describes (1) how the FAA's cost accounting system tracks 
the costs incurred by the FAA and (2) how the FAA assigned 
those costs to enroute and oceanic air traffic control services. 
The second document is a report entitled "Overflight Fee 
Development Report" (Overflight Report). It was prepared 
by the FAA itself and details the FAA's methodology used to 
calculate the fees imposed by the 2000 Rule.

 The Overflight Report explains that the fee development 
process involved four steps: (1) determining the FAA's full 
costs of providing both enroute and oceanic air traffic control 
services to all flights--that is, overflights and non-
overflights;3 (2) determining which of the costs identified in 
step one met the requirement of being "directly related" to 
the services rendered by the FAA; (3) determining, based on 
the costs computed in step two, unit costs for providing 
enroute and oceanic air traffic control services to overflights;4 
and (4) establishing overflight fees that cover air traffic 
control service costs as well as billing and collection costs. 
To compute the "unit costs" (step three), the FAA divided the 
"directly related" costs identified in step two by the total 
number of miles flown by all aircraft using the enroute 
_________
Reg. at 36004. "Oceanic" airspace is in turn defined as "airspace 
where primarily procedural air traffic services are provided." Id.

 3 Non-overflights are flights that either take off from or land (or 
both) in the United States.

 4 The Arthur Anderson Report explains that costs incurred in 
providing air traffic control services to aircraft arriving to and 
departing from airport facilities (known as "terminal" services) are 
not included in the enroute or oceanic cost pools. Also excluded 
from the two cost pools are costs incurred for providing services--
like pilot briefings, search and rescue coordination, aviation weather 
information (known as "flight services")--to non-overflights.

airspace and oceanic airspace, respectively. Explaining that 
the unit costs computed in step three were an appropriate 
measure of the cost of services provided to overflights, the 
FAA stated:

 Because the level of [air traffic control] services are [sic] 
 assumed identical for all aircraft operations within a 
 particular environment (i.e., enroute or oceanic), it is 
 reasonable to assume that the costs of providing [air 
 traffic control] services to overflights are proportional to 
 total ATC costs within each environment. Consequently, 
 the unit costs of providing [air traffic control] services to 
 overflights within each environment is [sic] identical to 
 the unit costs of providing [air traffic control] services to 
 all air traffic within each environment.
 
Revised Joint Appendix (JA) 19; see also JA 13 (same). 
Based on this methodology, the FAA concluded that unit 
costs for enroute overflights were $36.14 per 100 nautical 
miles (or portion thereof) and unit costs for oceanic over-
flights were $19.47 per 100 nautical miles (or portion thereof). 
The amounts were adjusted to include billing and collection 
expenses, resulting in the $37.43 and $20.16 fees set forth in 
the 2000 Rule.

 Within 60 days of publication of the 2000 Rule, the petition-
ers sought review in this court. See 49 U.S.C. s 46110(a).5

__________
 5 Earlier in this case, the FAA argued the petitioners' appeals 
might be premature and therefore it was "a close question" whether 
we had jurisdiction. The FAA has since conceded that no jurisdic-
tional problem prevents our deciding the case on the merits. 
Respondents' Response to Joint Motion to Consolidate Petitions for 
Review (filed April 23, 2001). We are satisfied that the petitioners' 
notices of appeal were timely and that we have jurisdiction pursuant 
to 49 U.S.C. s 46110(a). See id. ("[A] person disclosing a substan-
tial interest in an order issued by the Secretary of Transportation 
(or the Administrator of the Federal Aviation Administration with 
respect to aviation safety duties and powers designated to be 
carried out by the Administrator) under this part may apply for 
review of the order by filing a petition for review in the United 
States Court of Appeals for the District of Columbia Circuit ....").

 II.

 The petitioners' first argument is that in promulgating the 
2000 Rule the FAA was required (but failed) to comply with 
the notice and comment requirements of the Administrative 
Procedure Act (APA).6 Section 553 of the APA requires an 
agency to publish a "[g]eneral notice of proposed rule mak-
ing" and to "give interested persons an opportunity to partici-
pate in the rule making." 5 U.S.C. s 553(b), (c); see Asiana, 
134 F.3d at 396. The Congress may modify the requirements 
but a "[s]ubsequent statute may not be held to supersede or 
modify [the APA] ... except to the extent that it does so 
expressly." 5 U.S.C. s 559; see Asiana, 134 F.3d at 396. In 
Asiana, we held that section 45301(b)(2) exempted the 1997 
Rule from the APA's notice and comment requirements. See 
__________
 6 Section 553(b) and (c) of the APA provides in relevant part:

 
 (b) General notice of proposed rule making shall be publish-
 ed in the Federal Register, unless persons subject thereto are 
 named and either personally served or otherwise have actual 
 notice thereof in accordance with law. The notice shall in-
 clude--
 
 (1) a statement of the time, place, and nature of public 
 rule making proceedings;
 
 (2) reference to the legal authority under which the rule is 
 proposed; and
 
 (3) either the terms or substance of the proposed rule or a 
 description of the subjects and issues involved.
 ... 
 (c) After notice required by this section, the agency shall 
 give interested persons an opportunity to participate in the rule 
 making through submission of written data, views, or argu-
 ments with or without opportunity for oral presentation. After 
 consideration of the relevant matter presented, the agency 
 shall incorporate in the rules adopted a concise general state-
 ment of their basis and purpose.
 
 
 5 U.S.C. s 553(b), (c). 
 
id. at 399 ("To summarize, we hold that, to the extent that 
s 45301 specified otherwise, the FAA was not required to 
conform to APA s 553 procedures. Because the FAA com-
plied with s 45301, the process by which it implemented fees 
for overflights withstands the petitioners' challenge."). The 
question now before us is whether section 45301(b)(2) autho-
rizes the adoption of the 2000 Rule without notice and com-
ment as well. We conclude that it does.
 
 The Act authorizes the FAA to "publish in the Federal 
Register an initial fee schedule and associated collection 
process as an interim final rule, pursuant to which public 
comment will be sought and a final rule issued." 49 U.S.C. 
s 45301(b)(2). The petitioners reason that, because the 1997 
Rule already established the "initial" fee schedule authorized 
by the statute, the fee schedule established by the 2000 Rule 
was not the "initial" fee schedule and, accordingly, in promul-
gating it the FAA should have complied with the APA's notice 
and comment provisions. We disagree.
 
 Our decision in Asiana vacated the 1997 fee schedule in its 
entirety. As we have explained before, "[t]o 'vacate' ... 
means 'to annul; to cancel or rescind; to declare, to make, or 
to render, void; to defeat; to deprive of force; to make of no 
authority or validity; to set aside.' " Action on Smoking & 
Health v. Civil Aeronautics Bd., 713 F.2d 795, 797 (D.C. Cir. 
1983) (per curiam) (citations omitted). Thus, the Asiana 
holding had the effect of restoring the status quo ante, 
namely that no fee schedule was in effect. See id. ("[B]y 
vacating or rescinding the recissions [sic] proposed by ER-
1245, the judgment of this court had the effect of reinstating 
the rules previously in force...."). In light of the status quo 
ante, the 2000 Rule plainly establishes only "an initial [rather 
than a subsequent] fee schedule and associated collection 
process." Accordingly, the FAA was entitled to establish the 
overflight fees using an interim rulemaking without notice 
and comment.

 III.

 We review the FAA's adoption of the 2000 Rule to deter-
mine whether it is "arbitrary, capricious, an abuse of discre-
tion, or not in accordance with law." 5 U.S.C. s 706(2)(A). 
As the Supreme Court explained in Motor Vehicle Manufac-
turers Ass'n v. State Farm Mutual Automobile Insurance 
Co., 463 U.S. 29 (1983):

 The scope of review under the "arbitrary and capricious" 
 standard is narrow and a court is not to substitute its 
 judgment for that of the agency. Nevertheless, the 
 agency must examine the relevant data and articulate a 
 satisfactory explanation for its action including a "ration-
 al connection between the facts found and the choice 
 made." Burlington Truck Lines, Inc. v. United States, 
 371 U.S. 156, 168 (1962). In reviewing that explanation, 
 we must "consider whether the decision was based on a 
 consideration of the relevant factors and whether there 
 has been a clear error of judgment." Bowman Transp., 
 Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 
 281, 285 (1974); Citizens to Preserve Overton Park v. 
 Volpe, 401 U.S. 402, 416 (1971). Normally, an agency 
 rule would be arbitrary and capricious if the agency has 
 relied on factors which Congress has not intended it to 
 consider, entirely failed to consider an important aspect 
 of the problem, offered an explanation for its decision 
 that runs counter to the evidence before the agency, or is 
 so implausible that it could not be ascribed to a differ-
 ence in view or the product of agency expertise. The 
 reviewing court should not attempt itself to make up for 
 such deficiencies; we may not supply a reasoned basis 
 for the agency's action that the agency itself has not 
 given. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). 
 We will, however, "uphold a decision of less than ideal 
 clarity if the agency's path may reasonably be dis-
 cerned." Bowman Transp. Inc., 419 U.S. at 286. See 
 also Camp v. Pitts, 411 U.S. 138, 142-143 (per curiam).
 
Id. at 43. To survive arbitrary and capricious review, the 
2000 Rule must contain a "satisfactory explanation" for the 

FAA's conclusion that the overflight fees imposed are "direct-
ly related" to the FAA's cost of providing service to over-
flights. See 49 U.S.C. s 45301(b)(1)(B); Asiana, 134 F.3d at 
402. In view of the methodology followed by the FAA in 
establishing the fees, see supra pages 10-11, there must be at 
least record support for the proposition that the FAA incurs 
the same costs in providing service to overflights and non-
overflights using either the enroute airspace or the oceanic 
airspace. If that proposition is not true, the overflight fees 
established by the 2000 Rule would not be "directly related" 
to the FAA's costs of providing service to overflights as the 
Act requires.

 The petitioners contend that the FAA erroneously conclud-
ed that costs for providing services to non-overflights are the 
same as the costs of providing services to overflights. Over-
flights are different from other flights, the petitioners argue; 
they fly in high altitudes and do not require air traffic control 
assistance to ascend or descend either to airports or to lower 
altitudes surrounding airports. "Because [the] FAA must 
expend a substantially greater level of effort (in manpower 
and other resources) to provide air traffic control services to 
low altitude and transitional flights than it does for over-
flights, the FAA's costs of providing these services to an 
overflight must be lower, on average, than the FAA's cost of 
providing these services to all aircraft within a particular 
environment." Revised Opening Brief of Petitioners at 27-
28.

 The FAA defends its decision and argues the overflight 
fees conform to the Act's requirements. That may be so but 
we are unable on this record to evaluate the merits of the 
FAA's arguments. The FAA failed to provide any record 
justification for the proposition that costs for servicing over-
flights are the same as costs for servicing non-overflights. It 
simply assumed it was so. See JA 19 ("Because the level of 
[air traffic control] services are [sic] assumed identical for all 
aircraft operations within a particular environment (i.e., en-
route or oceanic), it is reasonable to assume that the costs of 
providing [air traffic control] services to overflights are pro-
portional to total ATC costs within each environment." (em-

phasis added)). Even under the more deferential standard of 
review applicable to an interim rule, see Competitive Tele-
comms. Ass'n v. FCC, 87 F.3d 522, 531 (D.C. Cir. 1996) ("The 
proper judicial response to an interim rule is ... to review it 
with the understanding that the agency may reasonably limit 
its commitment of resources to refining a rule with a short 
life expectancy."), this is not enough. And, while we agree 
with the FAA that " 'we do not sit as a panel of referees on a 
professional economics journal, but as a panel of generalist 
judges obliged to defer to a reasonable judgment by an 
agency acting pursuant to congressionally delegated authori-
ty,' " Revised Brief for Respondent at 38 (quoting City of Los 
Angeles v. Department of Transp., 165 F.3d 972, 977 (D.C. 
Cir. 1999)), "[w]ith its delicate balance of thorough record 
scrutiny and deference to agency expertise, judicial review 
can occur only when agencies explain their decisions with 
precision, for '[i]t will not do for a court to be compelled to 
guess at the theory underlying the agency's action....' " 
American Lung Ass'n v. EPA, 134 F.3d 388, 392 (D.C. Cir. 
1998) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196-97 
(1947)).

 Because the FAA has failed to articulate the basis for its 
conclusion that "the unit costs of providing [air traffic control] 
services to overflights within each environment is [sic] identi-
cal to the unit costs of providing [air traffic control] services 
to all air traffic within each environment," we 
remand to the FAA for further proceedings consis-
tent with this opinion.

 So ordered.