LAKEDREAMS, a Texas partnership, Plaintiff–Appellee,

v.

Steve TAYLOR, d/b/a California T's, Defendant–Appellant.

No. 90–1472.

United States Court of Appeals, Fifth Circuit.

June 11, 1991.

---

Gregory V. Novak, Wendell Coffee and Richard Neal Burt, Coffee–Novack, Lubbock, Tex., for defendant-appellant.

Brian P. Quinn, Robin M. Green and Jack P. Driskill, McWhorter, Cobb & Johnson, Lubbock, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON, and WIENER, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant–Appellant Steve Taylor ("Taylor") appeals from the order of the district court granting a preliminary injunction precluding Taylor from distributing shirts and other tangible items containing a design and text substantially similar to the design and text as appears in the copyright application of Plaintiff–Appellee Lakedreams, a Texas partnership. Finding that the district court did not abuse its discretion in issuing the preliminary injunction, this Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Four couples, while vacationing at Lake Buchanan, Texas, over the 1989 Labor Day weekend, created a mythical family with the surname "Schitt." The Schitt family, whose members had names that evoked one or another inelegant image, initially was nothing more than an inside joke between the couples. Gradually, however, the couples determined that the Schitt family was a marketable concept. They concluded that they could sell a number of printed t-shirts with a silkscreen design of the family tree ("Family Tree")[1] on one side and a silkscreen printing of the family genealogy (the "text") on the other side.

To market their product, the couples formed a partnership, known as Lakedreams.[2] The partners met periodically to discuss and revise their ideas. They created a number of drafts of the Family Tree design and wrote the text of the family history. One partner, JoAnn Harnar ("Harnar"), took some of these papers and drawings to Taylor. Harnar knew of Taylor's t-shirt business, California T's. Taylor agreed, for a fee, to prepare the silkscreens of Lakedreams' design and text. Taylor completed the artwork for the silkscreens based on the papers and drawings

---

1. The final Family Tree design is a drawing of a willow tree with names of family members printed on pieces of board hanging from various limbs of the tree.

2. Lakedreams' partners include John and Judy Blakey, Timothy and JoAnn Harnar, Jim and Suzanna Lambert, and David and Kathy Montgomery.

that Harnar gave him. Lakedreams' partners thoroughly reviewed Taylor's work and made a number of changes. The partners were satisfied that the final product embodied their original text and design. With Lakedreams' permission, Taylor began to print Family Tree t-shirts. Taylor then requested and received Lakedreams' permission to sell Family Tree t-shirts in his store.

While working with Taylor, the partners became concerned that they should attempt to obtain copyright protection of their Family Tree concept. Taylor suggested that they place a "c" within a circle and the name "Lakedreams" on the t-shirts. With the partners assent, Taylor's suggestion was incorporated as a part of the silkscreen artwork for both sides of the t-shirts. After marketing a number of shirts, the partners applied for a copyright. In January 1990, Lakedreams mailed an application for copyright registration to the Copyright Office of the Library of Congress, together with the appropriate fee and deposit. Though the fee check was cashed, Lakedreams apparently has never received a certificate of registration.

The t-shirts initially sold well. Eventually, the partners obtained a sales representative and decided to have another company print their shirts. After transferring to the new printer, Lakedreams discovered that Taylor was continuing to sell the Family Tree t-shirt in his own store. Taylor

acquiesced to Lakedreams' demand to discontinue marketing the t-shirt. However, Taylor soon began to market a t-shirt substantially identical to Lakedreams' t-shirt, with the exception that Taylor replaced Lakedreams' copyright emblem with one of his own. Thereafter, Taylor's attorney contacted Lakedreams' new printer and distributor to warn them that the act of printing and selling Lakedreams' Family Tree t-shirt infringed Taylor's copyright. Despite Lakedreams' pending copyright application, Taylor applied for and received a copyright certificate in his own name, with an effective date of April 1990.

Lakedreams filed suit against Taylor, asserting a number of claims.[3] Lakedreams then filed a motion for a temporary restraining order and a preliminary injunction to enjoin Taylor from infringing Lakedreams' copyright. The district court issued a temporary restraining order and set a hearing on the motion for a preliminary injunction. After the hearing, the district court granted a preliminary injunction to remain in force until trial.[4] Taylor filed a timely notice of appeal.

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, we must determine whether appellate jurisdiction exists to review this case. Taylor attempts to appeal both the order granting a preliminary injunction and the denial of his motion to

---

3. The complaint includes claims of copyright infringement, misappropriation and unfair competition, tortious interference with contract, slander per se, and seeks estoppel and injunctive relief.

4. The preliminary injunction orders the following:

> [T]he defendant, Steve Taylor, d/b/a California T's, his employees, agents, servants, attorneys, and those persons in active concert, privity, or participation with the defendant, who receive actual notice of this order by personal service or otherwise, shall immediately cease the printing, manufacturing, marketing, selling, advertising, or in any way distributing shirts and other tangible items containing the "Schitt Family Tree" and its design and text as same appears in Lakedreams' copyright application and all substantially

similar designs and texts, as are furthermore shown in Plaintiff's Exhibits I, J, and K and Defendant's Exhibit 2, which were introduced into evidence at the preliminary injunction hearing....

> The defendant, Steve Taylor, d/b/a California T's, his agents, servants, employees, attorneys, and those persons in active concert, privity or participation with defendant, who receive actual notice of this order by personal service or otherwise, shall cease all communication with third parties, other than this Court and legal counsel, regarding his or their ownership of or claims to the "Schitt Family Tree" and its design and text as same appears in Lakedreams' copyright application and all substantially similar designs and text, as are further shown in Plaintiff's Exhibits I, J, and K and Defendant's Exhibit 2, introduced into evidence at the preliminary injunction hearing....

dismiss Lakedreams' copyright infringement claim.

■■■ To be appealable, an order must be final,[5] it must fall within the specific class of interlocutory orders made appealable by statute,[6] or it must fall within some jurisprudential exception.[7] An order granting a preliminary injunction comes within the second category, *i.e.*, an interlocutory order made appealable pursuant to 28 U.S.C. § 1292(a)(1).[8] An order denying a defendant's motion to dismiss, however, does not qualify under any of the appealability alternatives. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1103 (5th Cir.1981). The mere fact that Taylor moved to dismiss during the injunction hearing does not provide a basis for review. There is no indication that the district court consolidated the preliminary injunction with a trial on the merits. In addition, the order granting the preliminary injunction makes no mention of the motion to dismiss. Hence, this Court has jurisdiction to review the preliminary injunction order, but we lack jurisdiction to review the district court's denial of Taylor's motion to dismiss. *See generally, EEOC v. Kerrville Bus Co.*, 925 F.2d 129 (5th Cir.1991).

**B.** *Preliminary Injunction*

■■■ A preliminary injunction is an extraordinary remedy. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). To obtain a preliminary injunction, the moving party must establish four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will

not disserve the public interest. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir.1989).

■■ The decision to grant or deny a preliminary injunction lies within the discretion of the district court. *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984). Accordingly, an order granting or denying a preliminary injunction will be reversed only upon a showing that the district court abused its discretion. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989). The district court's findings of fact are subject to the clearly erroneous standard of review. Fed.R.Civ.P. 52(a). Any legal determinations are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir.1990).

The district court in the instant case properly applied the four factor test for determining whether a preliminary injunction is justified. Taylor argues that the district court erred in reaching its conclusions on each of the four factors. We will discuss each factor in turn.

1. *Substantial Likelihood of Success*

Lakedreams' complaint alleges a number of causes of action. The district court found that Lakedreams had shown a substantial likelihood that it would succeed on the merits of two of its claims: copyright infringement and misappropriation of ideas. Since this Court concludes that Lakedreams has shown a substantial likelihood that it would succeed on the copyright infringement claim, we need not address the merits of the misappropriation claim.

■■■ A copyright infringement action requires that the plaintiff show "ownership" of the material and "copying" by the defendant. *Apple Barrel Productions*, 730 F.2d at 387. To establish "ownership," the

---

**5.** 28 U.S.C. § 1291 provides that, "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."

**6.** *See, e.g.,* 28 U.S.C. § 1292(a).

**7.** *E.g., Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (collateral order); *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) (hardship-irrepa-

rable injury); *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (practical finality).

**8.** 28 U.S.C. § 1292(a)(1) provides that the courts of appeals shall have jurisdiction of appeals from "Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...."

plaintiff must prove that the material is original, that it can be copyrighted, and that he has complied with statutory formalities. *Id.* To establish "copying," the plaintiff generally must show that the defendant had access to the material and that there is a substantial similarity between the two works. *Id.* at 387 n. 3.

a. Ownership

■ In asserting that Lakedreams failed to establish any element of the test for ownership in the Family Tree design and text, Taylor advances three arguments.[9] First, Taylor contests the district court's finding that the Family Tree was original with Lakedreams. While conceding that Lakedreams conceived of many of the ideas for the Family Tree design and text, Taylor asserts that he and his employees also contributed original ideas. The final product, Taylor contends, was drafted with his own originality. Despite Taylor's assertions concerning his contribution, though, the evidence supports the finding that Lakedreams' partners developed the Family Tree design and text, with only perfunctory assistance from Taylor.

■ Second, Taylor argues that Lakedreams merely had ideas, which are not in and of themselves copyrightable. *See* 17 U.S.C. § 102(b). Copyright protection is available only for works of authorship which are fixed in a tangible medium of expression. 17 U.S.C. § 102(a). The copyright's author, therefore, is the person who reduces an idea to a fixed, tangible expression. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). Taylor claims that he became the author by completing the silkscreen artwork. However, the evidence shows that, prior to hiring Taylor, Lakedreams had produced written products of the Family Tree design and text. Under Lakedreams' authority and

direction, Taylor merely transposed their expression from paper to cloth by means of silkscreening. Authors "are entitled to copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Andrien v. Southern Ocean County Chamber of Commerce,* 927 F.2d 132, 135 (3d Cir.1991). While the final artwork may have been slightly different from the text and drawings initially given to Taylor, Lakedreams' partners explained that they directed the changes themselves.

■ Third, Taylor contends that Lakedreams has not complied with statutory formalities because Lakedreams has never received a certificate of registration. Lakedreams mailed a completed copyright application with the appropriate fee and deposit to the Copyright Office. Receipt of the materials can be inferred from the testimony of one of Lakedreams' partners that the Copyright Office cashed the fee check. The record does not indicate the reason that the Copyright Office has not issued a certificate to Lakedreams. Nonetheless, as this Court stated in *Apple Barrel Productions,* a plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit.[10] 730 F.2d at 386–87; *see also Secure Services Technology, Inc. v. Time and Space Processing, Inc.,* 722 F.Supp. 1354, 1364 (E.D.Va.1989); *Sebastian International, Inc. v. Consumer Contact (PTY) Ltd.,* 664 F.Supp. 909, 912 (D.N.J.1987). Thus, the district court's finding of ownership is not clearly erroneous.

b. Copying

■ Taylor contends that the district court erred in determining that he copied Lakedreams' material. Taylor does not argue that he did not have access to Lake-

---

**9.** Lakedreams concedes that the work for hire doctrine, 17 U.S.C. § 201(b), is inapplicable.

**10.** Taylor emphasizes the fact that he received a certificate of registration before Lakedreams. The certificate constitutes prima facie evidence of the validity of the copyright. 17 U.S.C.

§ 410(c). Regardless, the certificate does not create an irrebuttable presumption of originality. *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980). Here, there was sufficient evidence to cast doubt on the validity of Taylor's copyright.

dreams' design and text. Rather, he simply asserts that there are significant differences between Lakedreams' original written work and the final artwork that he prepared. Because Taylor has failed to include the exhibits with the record on appeal, this Court is unable to find that the district court's determination concerning copying was clearly erroneous. *See* Fed.R. App.P. 10 and 11(a).

In sum, the evidence in the record supports a determination that Lakedreams owns the Family Tree design and text, and that Taylor copied them. Thus, this Court cannot conclude that the district court erred in determining that Lakedreams has shown a substantial likelihood of success on the merits.[11]

2. *Irreparable Injury*

■ The district court found that Lakedreams would suffer irreparable injury if a preliminary injunction were not issued. The district court stated that "the defendant's actions will prevent plaintiff from marketing the product in question, which will result in plaintiff having to cease operation." Taylor argues that Lakedreams will not suffer irreparable injury because any harm can be compensated by monetary damages.

The district court did not abuse its discretion. The testimony shows that Lakedreams was formed for the purpose of selling the Family Tree t-shirt. At the time of the preliminary injunction hearing, the Family Tree t-shirt remained Lakedreams' only product. If Taylor were able to continue his actions in preventing Lakedreams from distributing the shirts, then Lakedreams would be left without any business to conduct. Further, it is recognized that public demand for a novelty t-shirt may be fleeting. A delay in Lakedreams' ability to fully market the Family Tree t-shirt until after the litigation has been settled could substantially reduce the marketing potential of the t-shirt.

Taylor's argument that monetary damages would suffice has little merit. Given the lack of a sales history and the difficulty in establishing the extent of damage to Lakedreams' reputation resulting from Taylor's actions, any attempt to calculate damages could be considered too speculative. This Court has recognized that when economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate. *See Allied Marketing,* 878 F.2d at 810 n. 1; *Mississippi Power & Light Co.,* 760 F.2d at 630 n. 12.

3. *Balance of Hardship*

■ The district court found that the threatened injury to Lakedreams outweighed any damage that the preliminary injunction would cause Taylor. The district court explained that the t-shirt in issue was Lakedreams' only sales item, whereas Taylor sold numerous t-shirts and other products. Taylor argues that he will suffer more harm than Lakedreams because California T's is his only means of financial support; in contrast, Lakedreams' partners are not economically dependent upon t-shirt sales. Taylor's argument misses the mark. Taylor does not contend that his inability to produce the t-shirt in issue will have any appreciable effect on his business.[12] Moreover, Taylor erroneously compares himself to Lakedreams' partners instead of to Lakedreams itself. Under Texas law, a partnership, like Lakedreams, is often considered an entity separate from its partners. *See Haney v. Fenley, Bate, Deaton*

---

**11.** Our ruling is not to be construed as a final determination on the merits. In a preliminary injunction context, the movant need not prove his case. *H & W Industries, Inc. v. Formosa Plastics Corp.,* 860 F.2d 172, 179 (5th Cir.1988). It is sufficient if the movant shows a substantial likelihood of success. A final determination is possible only after a full evidentiary trial on the merits.

**12.** In the First Circuit's view, Taylor would not prevail even if he had shown that his business was based exclusively on marketing the Family Tree t-shirt. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 612 (1st Cir.1988) (citation omitted). The rule applies "even to a business which is exclusively based on an infringing activity and which would be virtually destroyed by a preliminary injunction." *Id.*

& *Porter*, 618 S.W.2d 541, 542 (Tex.1981). Lakedreams, the partnership, was clearly suffering substantial harm from the infringement as Lakedreams was solely dependent upon the Family Tree t-shirt for its economic existence at the time of the preliminary injunction hearing. Inasmuch as we have already determined that the likelihood of success lies with Lakedreams, we are more convinced that the balance of harm weighs in Lakedreams' favor. Thus, the district court did not err in determining that the balance of hardship weighs in favor of Lakedreams.

#### 4. *Public Interest*

The district court concluded, without elaboration, that the preliminary injunction will not disserve the public interest. Taylor argues that the public interest would be better served if the parties were permitted to compete and to "exercise their ingenuity until the dispute can be resolved." Contrary to Taylor's contention, the public's interest in competition may be outweighed by the public's concomitant interest in preserving rights provided by the federal copyright law. *Allied Marketing*, 878 F.2d at 810 n. 1. In addition, the public has an interest in preventing confusion about the origin of the products that it buys. The public interest weighs in favor of granting the preliminary injunction.

### III. CONCLUSION

Lakedreams established each of the factors necessary to obtain a preliminary injunction. The district court's order is therefore affirmed. Having made this ruling, this Court is concerned that this interlocutory appeal has caused a lengthy delay in the resolution of the case. Moreover, the preliminary injunction imposes a restraint on Taylor which may ultimately prove to be unjustified. Accordingly, the

---

**13.** *See Hawkins v. Board of Control,* 253 F.2d 752, 753 (5th Cir.1958) (reversing district court's denial of a preliminary injunction and ordering the district court to conduct a trial on the merits at the earliest practicable date); *Allied Marketing,* 878 F.2d at 815 (noting that it is frequently desirable to accelerate the trial on the merits after a preliminary injunction has been granted,

district court is urged to expedite the trial on the merits.[13]

AFFIRMED.

especially if the adverse party presents potentially significant defenses); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2950, at 484 (1973 & Supp.1990) ("[T]he urgency that is characteristic of cases involving preliminary injunction applications makes a rapid determination of the merits especially important.").