# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 99-20744

---

GEOSCAN, INC. OF TEXAS,

Plaintiff-Appellant,

versus

GEOTRACE TECHNOLOGIES, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

September 14, 2000

Before WIENER and STEWART, Circuit Judges, and ROSENTHAL[*], District Judge.

CARL E. STEWART, Circuit Judge:

Geoscan, Inc. of Texas ("Scan") appeals the district court's grant of summary judgment in favor of Geotrace Technologies, Inc. ("Trace") on Scan's claims of breach of contract and copyright infringement. For the following reasons we affirm in part, and reverse in part.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from a licensing agreement entered into by Scan and Trace. Scan develops and sells software used in the oil and gas exploration industry for plotting seismic data computer files ("the Plotting Software"). The Plotting Software is made up of five software components: Master Plot Server ("MPS"), GeoBand, CGMband, CGMgen, and QNET Daemeon ("QNET"). Trace processes seismic data using its own software program, ANSER, which integrates Scan's plotting software and some third party software. At the beginning of this suit Trace had offices in Denver, Dallas, Midland, Houston, Argentina, and Bolivia. Trace formerly operated offices in Venezuela and Nigeria.

In 1991, Scan and Trace entered into a licensing agreement ("1991 agreement" or "1991 licensing agreement"). The 1991 agreement grants Trace a nontransferable, non-exclusive license to use Scan's MPS and GeoBand software on designated central processing units ("CPUS") at the facility locations set forth in Exhibit A of the agreement. The agreement stated that the products may be used by and on behalf of Trace only on the designated CPUS at the designated facilities set forth in Exhibit A, and that Trace was prohibited from making Scan's products available to third parties not covered by the agreement. Exhibit A of the agreement is blank and contains no listing of CPUS or locations. A purchase order dated September 23, 1991 shows that Trace purchased three MPS licenses at $15,000 each, for a total of $45,000. Later invoices show that these three MPS software packages were installed in Trace's Dallas, Midland, and Houston offices.

In November 1994, the parties entered into a negotiation to determine terms and pricing for Trace to purchase other licenses from Scan ("the Proposal"). The Proposal does not mention the 1991 agreement. In the Proposal, Scan agrees to sell the first MPS license for $15,000, the next MPS

2

license for $12,000, and there is discounted pricing for each subsequent license purchased. The Proposal provides that the purchase price of each MPS license is credited toward the MPS corporate license. The price of an MPS corporate license is listed at $50,000. The Proposal states that a corporate license would allow Trace unlimited use of the MPS software. An invoice dated November 10, 1994 shows that Trace purchased one MPS license with Qnet for $15,000. The Proposal also lists prices for the purchase of a corporate license for use of the GeoBand libraries and the CGMband and CGMgen software components. The proposal states that a corporate license for the CGMband and CGMgen software may be purchased for $15,000. Later invoices demonstrate that Trace purchased site licenses for CGMgen and CGMband, one for the Houston office, one for the Denver office, and two for the Dallas office for $5,000 each.

In April 1998, Scan sent a demand letter to Trace stating that the MPS, GeoBand and Qnet software had been installed on 76 unauthorized computers, and demanding $1,140,000 in payment. In July1998, Scan filed suit against Trace in Texas state court alleging breach of contract, copyright infringement, and unfair trade practices. The suit was removed to federal court on authority of 28 U.S.C. §§ 1338 and 1441(a). Both parties filed motions for summary judgment. The district court granted summary judgment in favor of Trace on all claims. The district court also found that the filing of the lawsuit in July 1998 acted as a termination of the contract between the parties and thus ordered Trace to cease using Scan's software within two months.

DISCUSSION

I.    Standard of Review

A district court's grant of summary judgment is reviewed de novo. See Reliance Nat. Ins. Co. v. Estate of Tomlinson, 171 F.3d 1033, 1035 (5th Cir. 1999). Summary judgment is properly granted

3

in favor of the moving party when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Scales v. Slater, 181 F.3d 703, 708 (5th Cir. 1999) (citing Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999)).

II.    Breach of Contract

Scan puts forth several arguments to support its claim that Trace breached the 1991 licensing agreement. First, Scan contends that the 1991 agreement only allowed MPS and GeoBand to be placed on designated CPUS and that Trace only purchased licenses for four CPUS, thus Trace violated the agreement by using the MPS software on multiple CPUS in each office, and by using the software in the Nigerian office, for which no license was purchased. Next, Scan claims that the 1991 agreement also covered the licensing of the CGMgen, CGMband, and Qnet software, that Trace purchased only three site licenses to use this software, and that Trace thus violated the agreement by using the software on more than 20 computers. Finally, Scan alleges that Trace violated the 1991 licensing agreement by distributing Scan software to third parties. We will address each of these arguments in turn.

A.    Ambiguity

4

The determination of whether a contract is ambiguous is a question of law.  See Burns v.

Exxon Corp., 158 F.3d 36, 340 (5th Cir. 1998); Fireman's Fund Insurance Company v. Murchison,

937 F.2d 204, 206 (5th Cir. 1991) (citations omitted).  A contract is ambiguous if it is reasonably

subject to more than one meaning.  Fireman's Fund, 937 F.2d at 206.  If a contract is ambiguous,

"summary judgment is inappropriate because the interpretation of a contract is a question of fact."

Id. (citing Torn v. Braniff, Inc., 893 F.2d 763, 765 (5th Cir. 1990).

In the present case, the district court found that the 1991 licensing agreement was

unambiguous[2], and that it allowed Trace to use Scan software on multiple central processing units

at multiple locations.  The 1991 licensing agreement states:

> Geoscan grants to [Geotrace] a paid-up, nontransferable, non-exclusive license to use GEOSCAN'S MASTER PLOT SERVER RASTERIZER SOFTWARE implemented on various host central processing units ("CPUS")...and the GEOSCAN BANDED FILE GENERATION LIBRARY ("GEOBAND") *but only on the designated CPUS* ("designated CPUS") *at the facility locations set forth in Exhibit A*.  Exhibit A will be amended as additional CPUS are licensed or as hardware is upgraded or replaced. (emphasis added).

Neither of the parties disputes that Exhibit A was not completed, in that there are no designated

CPUS or designated facility locations listed on Exhibit A.  Trace contends that because there were

no designated CPUS listed on Exhibit A, we should construe the contract language against Scan as

the drafter, and find that the 1991 agreement entitles Trace to use the Scan software on an unlimited

number of CPUS and sites.  Scan counters that although Exhibit A was never completed, Trace's

purchase of individual MPS licenses after the 1991 agreement demonstrates that use of the Scan

software was limited to the CPUS designated in the individual MPS licenses.  We find that the

interpretations of the 1991 agreement offered by Trace and Scan are both plausible.  Thus, we hold

---

[2] The record did not include either a memorandum opinion or a trial transcript that outlines the district court's analysis of this issue.

that due to the incompleteness of Exhibit A, the 1991 licensing agreement is subject to more than one reasonable interpretation and is therefore ambiguous as to which designated CPUS or locations Trace could use the MPS and GeoBand software.[3] Thus, due to the ambiguity of the contract in regards to the number of CPUS or locations on which the software could be used, summary judgment was inappropriately entered on Scan's MPS and GeoBand breach of contract claim.[4]

B. CGMgen, CGMband, and Qnet

Scan argues that the 1991 licensing agreement also applies to Trace's use of the CGMgen, CGMband, and Qnet software, and that the district court erred in granting summary judgment to Trace on Scan's breach of contract claims regarding these software components. The language of the 1991 licensing agreement states that it applies to the MPS software and the GeoBand software. Nowhere does the agreement state that it will apply to what Scan terms "derivative software," such as CGMband, CGMgen, and Qnet. The proposal submitted by Scan to Trace on November 8, 1994 states that Trace may purchase a corporate license for CGMgen and CGMband for $15,000. Subsequently, in 1995, Trace purchased one CGMgen and CGMband license for the Dallas office, one for the Houston office, and one for the Denver office at $5,000 each. This totaled $15,000. On the purchase order for the Denver license Trace wrote that it had now purchased the amount of CGMgen and CGMband software necessary for a corporate license. The 1994 proposal also states

_____

[3] The parties do not cite and an independent review of the applicable case law has not revealed any cases which state that a incomplete contract is necessarily ambiguous. However, under the circumstances of the present case the incompleteness of Exhibit A leads to the contract being subject to more than one reasonable interpretation. Thus, we find the contract to be ambiguous.

[4] At oral argument Trace conceded that if we should find that the contract was ambiguous as to the number of CPUS or sites at which Trace could use the MPS software, there would be contested genuine issues of material fact that should be remanded to the district court for resolution.

6

that the purchase of an MPS license and maintenance for Qnet entitled Trace to a Qnet server license at no charge. An invoice dated November 10, 1994 indicates that Trace purchased one MPS license and Qnet maintenance. Thus, under the 1994 proposal, Trace was entitled to a Qnet server license. Because the 1991 agreement does not state that it applies to CGMgen, CGMband, or Qnet, we find that the Trace did not breach the 1991 agreement as to its use of the software. The 1994 proposal and subsequent acceptance of the proposal through purchase of licenses for the software, entitled Trace to a corporate license for CGMgen and CGMband and a corporate license for Qnet. Thus, the district court properly granted summary judgment on Scan's CGMgen, CGMband, and Qnet breach of contract claims.

C. Third Party Distribution

Finally, Scan contends that Trace breached the 1991 licensing agreement by distributing Scan software to third parties. Specifically, Scan maintains that Trace distributed Scan software to a Nigerian business, to a Canadian computer company, Techco, and to several independent contractor computer programmers. The 1991 agreement states that: "[Trace] shall take all necessary steps to ensure that the Products...are not made available or disclosed by the Licensee directly or indirectly, to any individual, firm, or corporation which is *not covered by this Agreement*." (emphasis added). The Agreement states that the products may be used "by and *on behalf of* Licensee." The summary judgment evidence presented by Trace establishes that the Nigerian office was not a "third party" but instead was a Trace office located in Nigeria. The summary judgment evidence establishes that Trace owned 50% of the Nigerian business. Also, the Nigerian partners who owned the other 50% were not involved in the daily operations of the business; instead, the operations were run by Trace

7

employees. There was no summary judgment evidence presented in rebuttal to demonstrate that Scan software was distributed to non-Trace partners or employees in the Nigerian office.

A Canadian company, Techco, had access to Trace's software program, ANSER. Scan software and Techco software are both embedded in the larger ANSER software program. Techco had access to the ANSER program in order to test modifications of the Techco software as it was used in the larger ANSER software. Scan was informed that Trace had made ANSER available to Techco to test modifications. Techco was working on behalf of Trace by overseeing modifications to Trace's ANSER software. Thus, because Techco was working on behalf of Trace when it had access to the embedded Scan software, Techco was covered under the agreement and any disclosure of Scan software to Techco was not a violation of the agreement.

Some independent contracting computer programmers also had limited access to the ANSER program. Similar to Techco, the summary judgment evidence shows that the independent contractor computer programmers only were given access to the embedded Scan software while they were working on behalf of Trace. The ANSER program in which the Scan software was embedded had key codes that would have prevented general access to the ANSER program. Thus, the summary judgment evidence supports the district court's grant of summary judgment in favor of Trace on the issue of breach of the 1991 agreement by disclosure to third parties.

III. Copyright

Scan argues that the district court erred in granting summary judgment to Trace on its copyright infringement claims. Scan maintains that Trace infringed on its copyrights in the plotting software by exceeding the scope of the licenses Trace had purchased to use the software.

8

Specifically, Scan contends that Trace exceeded the scope of its licenses by making numerous copies of Scan software on Trace CPUS, and distributing copies of Scan software to the Nigerian corporation, Canadian corporation, and independent contractors.

To maintain a copyright infringement claim, the owner of the copyright must have registered it. See 17 U.S.C. § 411(a). An action for copyright infringement requires the plaintiff to show "ownership" of the material and "copying" of the material by the defendant. Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991). To establish "ownership" of the material the plaintiff must show that the material is original, the material can be copyrighted, and compliance with all statutory formalities. Id.

Trace argues that Scan cannot establish "ownership" of the material because it did not comply with all of the statutory formalities for copyright registration. We have previously held that a plaintiff has complied with all statutory formalities for copyright registration when the Copyright office receives the plaintiff's application for registration, fee, and deposit. Id. at 1108. Trace maintains that while Scan did send in applications and fees to the Copyright office on June 1, 1998, the deposits made by Scan were incomplete because Scan failed to include two complete copies of each software program it sought to register. See 17 U.S.C. § 408(b)(2); 17 U.S.C. § 411. The summary judgment record demonstrates that Scan did submit a deposit of the first ten lines and last ten lines of source code for its software with each application and fee. However, correspondence between the Copyright Office and Scan indicates that registration of the copyrights was not complete as of February 1999 because Scan had not submitted for deposit the *original* source codes for its software, instead Scan had submitted later versions of source code.

9

In order to obtain a valid copyright registration for a published work, the applicant must submit two complete copies of the work. 17 U.S.C. § 408(b). The Ninth Circuit has held that the registration deposit requirement permits "bona fide copies of the original work only." Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1210 (9th Cir. 1998). In this circuit's cases in which we have held that the statutory registration formalities have been complied with if an application, fee, and deposit have been submitted to the Copyright Office, the applicant's copyright registration was challenged because the applicant did not possess the certificate of copyright registration. See e.g., Apple Barrel Productions, Inc. v. R.D. Beard, 730 F.2d 384, 386-87 (5th Cir. 1984). We have not addressed the consequences to the status of a copyright registration when a copyright applicant submits an incomplete or inadequate application, fee, or deposit. See e.g., Lakedreams, 932 F.2d at 1108 ("Lakedreams mailed a completed copyright application with the *appropriate* fee and deposit to the Copyright Office")(emphasis added). Thus, we hold that at the time of the filing of this suit in July 1998, although Scan had filed an application, paid a fee, and made a deposit with the Copyright Office, the deposit was not a complete copy of the original source code, thus Scan had not fulfilled all the statutory formalities necessary to register its copyright and have "ownership" in its software for the purposes of a copyright infringement claim. The district court properly granted summary judgment to Trace on Scan's copyright claims.

IV.     Last Vestige-Only Use

Scan argues that the trial court made a clerical error by omitting in its final judgment an order requiring Trace to pay for last vestige-only use under the contract, and the clerical error may be corrected by this court under Fed. R. Civ. P. 60(a). Scan asserts that the district court orally entered an order stating that Trace must pay the contract fee through the last vestige-only use, but in its final

10

judgment the district court failed to order monetary relief because Trace had removed all of Scan's software from its computer. A review of the transcript from the hearing in question reveals that the district court allowed Trace a two month period to remove the Scan software before Trace would be required to pay last vestige-only use fees under the contract. Therefore, failure to order payment of last vestige-only use contract fees was not a clerical error by the district court.

CONCLUSION

We hold that the district court erred in granting summary judgment on Scan's MPS and GeoBand breach of contract claim  Thus, the district court's grant of summary judgment as to the MPS and GeoBand breach of contract claim is REVERSED, and REMANDED for trial. All other claims to which the district court granted summary judgment to Trace are AFFIRMED.