### R.A. MACKIE & CO., L.P. and Wein Securities Corp. Plaintiffs

v.

### PETROCORP INCORPORATED and Petrocorp Acquisition Corp., as successors in interest to Southern Mineral Corp., and as individual corporations. Defendants.

No. 02 CIV.1984 (JGK).

United States District Court, S.D. New York.

Feb. 13, 2003.

Timothy P. Kebbe, Lehman & Eilen, Uniondale, NY, for plaintiffs.

Sabrina Renate Der Bagdasarian, William A. Maher, Wollmuth, Maher & Deutsch, LLP, New York City, for defendants.

### OPINION AND ORDER

KOELTL, District Judge.

This is an action brought by R.A. Mackie & Co., L.P. ("Mackie") and Wein Securities Corporation ("Wein") (collectively "the plaintiffs") for breach of contract, tortious interference with contract, and unjust enrichment arising out of an agreement (the "Warrant Agreement") entitling the plaintiffs to perpetual warrants to purchase the stock of the Southern Mineral Corporation ("Southern Mineral"), a corporation whose assets were acquired via merger and whose liabilities were succeeded to by PetroCorp Acquisition Corp., a wholly owned subsidiary of PetroCorp Incorporated ("PetroCorp") (collectively "the defendants"). Pursuant to the Merger Agreement between Southern Mineral and PetroCorp Acquisition, all outstanding warrant holders, including the plaintiffs, were given an effective date by which they could exercise their options to receive PetroCorp stock and if they failed to opt for PetroCorp stock by the date specified, they could only receive cash consideration for their warrants. The plaintiffs contend that the terms of the Merger Agreement breached the terms of the Warrant Agreement by effectively converting perpetual warrants into options that were only exercisable by a date certain. The Amended Complaint raised five causes of action, including (1) breach of contract, alleging that the Merger Agreement violated the terms of the Warrant Agreement creating

perpetual warrants; (2) breach of contract, alleging that the Merger Agreement violated the terms of the Warrant Agreement by failing to provide fair provisions enabling warrant-holder to receive Petro-Corp stock; (3) unjust enrichment; and (4) tortious interference with contractual relations. The plaintiffs also seek a declaratory judgment that the former Southern Mineral warrant holders are entitled to perpetual warrants for PetroCorp stock and that the Merger Agreement breached the terms of the Warrant Agreement.

The defendants have moved for summary judgment on the breach of contract claims, arguing, among other things, that the terms of the Warrant Agreement permitted the defendants to require that the warrant holders exercise their warrants in the manner specified in the Merger Agreement. The plaintiffs have also moved for summary judgment, with respect to all of their claims, with the exception of the claim for unjust enrichment, arguing that the unambiguous terms of the Warrant Agreement provided that the warrant holders could exercise their rights to purchase PetroCorp stock in perpetuity, and therefore the defendants breached their obligations by requiring the plaintiffs to exercise their options within a specified time period.[1]

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship., 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor

---

1. After the defendants filed their motion for summary judgment, the plaintiffs cross-moved pursuant to Fed.R.Civ.P. 56(f) to continue the defendants' motion until the completion of discovery. The motion pursuant·to

Rule 56(f) is denied as moot, because discovery has now been completed, and after the close of discovery, the plaintiffs filed their motion for summary judgment.

of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir.1998) (collecting cases).

Normally, when both parties seek summary judgment, the Court must " 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Abrams v. United States,* 797 F.2d 100, 103 (2d Cir.1986) (quoting *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)).

### III.

Unless otherwise noted, the following facts are not in dispute. On September 29, 2000, in connection with Southern Mineral Corporation's ("Southern Mineral") bankruptcy reorganization plan, Southern Mineral and the American Stock Transfer & Trust Company entered into a Series B Perpetual Warrant Agreement, under which 3,667,000 Series B Perpetual Warrants were issued to Southern Mineral's common shareholders, option holders and warrant holders of record. (Pls.' Rule 56.1 Stmt. ¶¶ 1–2; Defts.' Resp. Rule 56.1 Stmt. ¶¶ 1–2.) The warrants began trading on the NASD's Over–the–Counter Bulletin Board as of October 16, 2000 and were delisted from the board on June 7, 2001, one day after a merger between Southern Mineral and PetroCorp Acquisition Corporation, a subsidiary of Petro-Corp, was completed. (Pls.' Rule 56.1 Stmt. ¶ 3; Defts.' Resp. Rule 56.1 Stmt. ¶ 3.) The plaintiffs, Wein and Mackie, purchased and sold warrants issued by Southern Mineral. (Pls.' Rule 56.1 Stmt. ¶ 8; Defts.' Resp. Rule 56.1 Stmt. ¶ 8.)

Pursuant to the terms of the Warrant Agreement, the Southern Mineral warrants were to be perpetual, subject to the other terms and conditions in the Warrant Agreement, and could not be called. (Pls.' Rule 56.1 Stmt. ¶¶ 4, 27; Defts.' Resp. Rule 56.1 Stmt. ¶¶ 4, 27.) The terms and conditions of the Warrant Agreement are binding on the successors of Southern Mineral, which by virtue of the Merger Agreement, included PetroCorp. (Pls.' Rule 56.1 Stmt. ¶ 7; Defts.' Resp. Rule 56.1 Stmt. ¶ 7.)

On December 22, 2000 Southern Mineral entered into an Agreement and Plan of Merger (the "Merger Agreement"), and on June 6, 2001 PetroCorp completed its acquisition of Southern Mineral. (Pls.' Rule 56.1 Stmt. ¶ 9; Defts.' Resp. Rule 56.1 Stmt. ¶ 9.) The Merger Agreement established the terms for the treatment of the warrants that were held by the warrant holders. (Pls.' Rule 56.1 Stmt. ¶ 10; Defts.' Resp. Rule 56.1 Stmt. ¶ 10.) At the time of the merger, the Southern Mineral stock was valued at $4.71 per share and the warrant exercise price was $4.21 per share. (Defts.' Rule 56.1 Stmt. ¶ 5; Pls.' Resp. Rule 56.1 Stmt. ¶ 4.) The warrant holders were given notice by Southern Mineral on May 8, 2001, implementing the terms of the Merger Agreement governing warrants. (Pls.' Rule 56 .1 Stmt. ¶¶ 12, 19; Defts.' Resp. Rule 56.1 Stmt. ¶¶ 12, 19.) The Merger Agreement provided that in exchange for each share of Southern Mineral stock, each Southern Mineral shareholder would receive merger

consideration of $4.71 in cash, or, if the shareholder timely elected, in PetroCorp common stock valued at $10.00 per share or .471 shares of PetroCorp common stock for each share of Southern Mineral stock. (Defts.' Rule 56.1 Stmt. ¶ 8(a).) Similarly, each warrant holder would receive the same right to acquire cash, or if a timely exercise were made, cash and PetroCorp stock, as each shareholder did. (Defts.' Rule 56.1 Stmt. ¶ 8(d); Pls.' Rule 56.1 Stmt. ¶¶ 10–11.) As of December 31, 2001, 124,961 warrants to buy PetroCorp stock—which were originally warrants to purchase Southern Mineral stock—remained outstanding. (Pls.' Rule 56.1 Stmt. ¶ 24; Defts.' Resp. Rule 56.1 Stmt. ¶ 24.)

## IV.

■ The plaintiffs and the defendants have both moved for summary judgment on the first two counts in the Amended Complaint, the breach of contract claims. The central issue with respect to whether summary judgment is appropriate on the breach of contract claims is whether the terms of the Merger Agreement breached the terms of the Warrant Agreement.

Determining whether the Merger Agreement does, in fact, breach the Warrant Agreement depends on the interpretation of the Warrant Agreement. The interpretation of the Warrant Agreement is, by its terms, governed by Texas Law. (*See* Series B Perpetual Warrant Agreement ("Warrant Agreement") § 6.12 ("... THE VALIDITY, INTERPRETATION, AND PERFORMANCE OF THIS AGREEMENT AND OF THE WARRANTS SHALL BE GOVERNED BY

THE LAW OF THE STATE OF TEXAS.").)

Under Texas law, when interpreting a contract " 'the primary concern of the court is to ascertain the intentions of the parties as expressed in the instrument.' " *Epps v. NCNB Texas Nat. Bank*, 838 F.Supp. 296, 301 (N.D.Tex.1993) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)), *aff'd* 7 F.3d 44 (5th Cir.1993); *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 231 (5th Cir.2000). The entire contract is to be examined, so as to give meaning and effect to all of its terms, and not to render any term meaningless. *Epps*, 838 F.Supp. at 301; *Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir.1984). In addition, terms in the contract are to be given "their common, plain, popular, and ordinary meaning, unless it definitely appears that the intention of the parties would thereby be defeated." *Epps*, 838 F.Supp. at 301.

Whether a contract term is ambiguous is a question of law to be determined by this Court. *Geoscan, Inc. of Texas v. Geotrace Tech., Inc.*, 226 F.3d 387, 390 (5th Cir. 2000); *Pollock v. F.D.I.C.*, 17 F.3d 798, 803 (5th Cir.1994). A contract is ambiguous "if it is reasonably subject to more than one meaning." *Geoscan*, 226 F.3d at 390; *see also Mid–Continent Cas. Co.*, 205 F.3d at 231; *Pollock*, 17 F.3d at 803. Simply because parties disagree about a contract's meaning, however, is not dispositive as to whether the contract is ambiguous. *Id.* If a contract is ambiguous, then summary judgment is inappropriate, because there is a genuine factual dispute that cannot be resolved as a matter of law. *Geoscan*, 226 F.3d at 390.[2]

---

**2.** The Merger Agreement, unlike the Warrant Agreement, is governed by Delaware law. (*See* Agreement and Plan of Merger ("Merger Agreement") dated Dec. 22, 2000 at § 8.7) ("EXCEPT TO THE EXTENT THE LAW OF ANOTHER JURISDICTION IS REQUIRED

TO BE APPLIED, THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE."). However, it is unnecessary to outline Delaware contract law with respect to ambiguity and the interpreta-

Summary judgment for either the plaintiffs or the defendants would, therefore, be inappropriate on the breach of contract claims if the critical provisions of the Warrant Agreement, including Section 3.3, and the Warrant Certificates were ambiguous.

The Warrant Certificate, issued to all purchasers of warrants of Southern Mineral, states in relevant part:

> This Warrant Certificate certifies that ... [the warrant holder is entitled] to purchase, *at any time* one share (as adjusted) of common stock, par value $0.01 per share ("COMMON STOCK"), of Southern Mineral Corporation, a Nevada Corporation (the "COMPANY") as such stock is constituted at the date of this warrant, at the price of $4.21 per share, (as adjusted, the "WARRANT PRICE"), *but such number of shares and the Warrant Price may be adjusted from time to time upon the occurrence of certain events as provided in the Warrant Agreement.*

(Southern Mineral Corporation Series B Warrant Certificate ("Warrant Certificate") (emphasis added).) The parties agree that this language created perpetual warrants, and that the warrants were to be governed by the terms contained in the Warrant Agreement. In turn, Section 3.3 of the Warrant Agreement governs the warrants in the event of a reorganization of Southern Mineral. That section provides, in relevant part,

> If after the date hereof any capital reorganization or reclassification of the Common Stock of the Company, or any consolidation, merger, share exchange, or similar transaction involving the Company ["Southern Mineral"], or the sale of all or substantially all of the Company's assets shall be effected, then, as a condi-

tion of such reorganization, reclassification, consolidation, merger, share exchange, similar transaction or asset sale, lawful and fair provision shall be made whereby *the Warrant Certificate holders shall thereafter have the right to purchase and receive upon the basis and upon the terms and conditions specified in the Warrant Certificates and in lieu of the shares of Common Stock of the Company* immediately theretofore purchasable and receivable upon the exercise of the Warrants represented thereby, *such shares of stock, securities, or assets as may be issued or payable with respect to or in exchange for a number of outstanding shares of such Common Stock of the Company equal to the number of shares of such stock immediately theretofore purchasable and receivable upon the exercise of the Warrants had such reorganization, reclassification, consolidation, merger, share exchange, similar transaction or asset sale not taken place,* and in such case appropriate provision shall be made with respect to the rights and interests of the Warrant Certificate holders to the end that the provisions hereof (including, without limitation, provisions for adjustments of the Warrant price and of the number of shares purchasable upon the exercise of the Warrants) shall thereafter be applicable, as nearly as may be in relation to any share of stock, securities, or assets thereafter deliverable upon the exercise hereof.

(Warrant Agreement § 3.3.) (emphasis added).

This provision was made applicable by the merger between Southern Mineral and PetroCorp. Section 3.3 plainly required that as a "condition of such ... merger"

---

tion of contracts, because the parties do not have any dispute about the interpretation of the Merger Agreement, and the meaning of its provisions. Rather, they disagree about the effect of the Merger Agreement's provisions have with respect to the Warrant Agreement.

that the Warrant holders were to be provided with "such shares of stock, securities, or assets as may be issued or payable with respect to or in exchange for" currently outstanding Southern Mineral stock, as provided for in the Merger Agreement. Any merger agreement had to contain a provision "with respect to the rights and interests of the Warrant Certificates." Finally, any provision providing warrant-holders the same bundle of rights and options for present Southern Mineral stockholders must comport with the "terms and conditions specified in the Warrant Certificates."

The Merger Agreement, the parties agree without dispute, provides for the warrant holders. The Merger Agreement established the Merger Consideration that was to be provided for Southern Mineral stockholders. Section 1.5(c) of the Merger Agreement provided, in relevant part,

[E]ach issued and outstanding share of [Southern Mineral] Common Stock not cancelled ... will be converted into one of the following (the *"Merger Consideration"*):

(i) for each such share of [Southern Mineral] Common Stock ... the right to receive an amount in cash, without interest ... equal to $4.71 ...; or

(ii) at the election of the holder thereof, for each such share of Company Common Stock as to which a Stock Election has been effectively made and not revoked or lost, the right to receive a

number of shares of [PetroCorp] Common Stock equal to the Exchange Ratio ... The *"Exchange Ratio"* will equal the Per Share Merger Consideration divided by 10.

(Merger Agreement § 1.5(c)).[3] The consideration offered to the warrant-holders was based on the "Merger Consideration" and defined in § 1.6(g) of the Agreement. That provision provides, in relevant part:

At the Effective Time, each warrant to purchase shares of [Southern Mineral] Common Stock that is outstanding immediately prior to the Effective Time ... will remain outstanding and will become warrants to acquire Per Share Merger Consideration on terms set forth in the Warrant. After the Effective Time, each Warrant will represent the right to receive, upon exercise of such Warrant, an amount of cash (without interest) ... The other terms of each such Warrant and the applicable Company warrant agreement under which it was issued will continue to apply.

(Warrant Agreement ¶ 1.6(g).) The Effective Time relevant to this provision was May 29, 2001 at 5:00 P.M. The parties agree that the effect of § 1.6(g) was the following: warrant-holders who exercised their warrants prior to the Effective Date received merger consideration as defined in § 1.5(c) of the Merger Agreement, while those who exercised their warrants after the Effective Date received cash consideration of $0.50. The dispute is whether these Merger Agreement provisions violat-

**3.** If the aggregate number of shares of Southern Mineral Common Stock as to which a Stock Election was effectively made represented the rights to receive more than 4,000,000 shares of PetroCorp Common Stock, then those shareholders would have their PetroCorp Common Stock prorated. (Merger Agreement § 1.5(e).) At argument on the motions, counsel advised the Court that Common Stockholders of Southern Mineral who elected to receive PetroCorp Common Stock re-

ceived 40–50% of their consideration in PetroCorp Common Stock. It is that same ratio of PetroCorp Common Stock to cash that the plaintiffs seek to obtain for their warrants, except they seek to have that right continue rather than to require that the exercise have been made by the effective date by which the Merger Agreement required the Common Stockholders and the Warrant Holders to have made their election as to whether they elected to receive PetroCorp Common Stock.

ed the provisions of the Warrant Agreement and the Warrant Certificates.

The plaintiffs argue that although the terms of the Warrant Certificate provided that the warrants to purchase Southern Mineral stock were perpetual, and therefore could not expire, the defendants' actions in connection with the merger of Southern Mineral and PetroCorop, along with the Merger Agreement, breached the terms of the Warrant Agreement governing non-expiration. Specifically, the plaintiffs argue that Sections 1.5 and 1.6 of the Merger Agreement, as well as the May 8, 2001 notice to the Southern Mineral stockholders and warrant-holders, violated the terms of the Warrant Agreement, because they gave the warrant-holders two options, both of which ended the perpetual, non-expiring, nature of the warrants. The warrant-holders were given the choice of exercising their warrants, and thereby receiving PetroCorp common stock, if they made their election before May 29, 2001 at 5:00 P.M. Those warrant holders who chose to hold on to their warrants and not to exercise their options by that date and time, according to the plaintiffs, lost their ability to receive PetroCorp stock, and could exchange their warrants only for a small sum of $0.50 per warrant. Either of the forced choices, the plaintiffs contend, breached the terms of the Warrant Agreement, because it destroyed the ability of the warrant-holder to receive stock in perpetuity. In essence, the main thrust of the plaintiffs' allegation is that the Merger Agreement and the plaintiff's May 8, 2001 notice called the warrants, which, pursuant to the Warrant Agreement, were to be non-callable options.

The plaintiffs also contend that the Merger Agreement breached the Warrant Agreement because after the effective date, May 29, 2001 at 5:00 P.M., the warrant-holders were no longer able to receive the same consideration that actual holders of Southern Mineral stock were able to receive after the merger was completed. The plaintiffs contend that the Warrant Agreement entitled the warrant-holders in the event of a merger to receive the same consideration as the Southern Mineral stockholders for the duration of the warrants, a non-terminating period of time and that the Merger Agreement violated those terms by creating a disparity between the rights of Southern Mineral stockholders and the rights of those individuals who held warrants after May 29, 2001 at 5:00 P.M.

The defendants contend that the Merger Agreement did not, and could not have, breached the Warrant Agreement. The defendants argue that the Warrant Agreement only created perpetual warrants to the extent that there was no liquidating event, and the merger between Southern Mineral and PetroCorp was such a liquidating event and entitled PetroCorp to set a date by which the warrants could be exercised. Moreover, the defendants argue that the Merger Agreement on its face is fully consistent with the terms of the Warrant Agreement, because it provided the warrant-holders with the identical bundle of rights provided to the stockholders of Southern Mineral, which included the option of receiving cash or a combination of cash and PetroCorp stock, provided a timely election was made.

Many of these arguments, raised both by the plaintiffs and the defendants, cannot be resolved as a matter of law, because the Warrant Agreement and the Warrant Certificates are ambiguous. The Warrant Agreement requires that any consideration or rights provided to the warrant holders as a result of a merger or reorganization must satisfy the "terms and conditions specified in the Warrant Certificates." The Warrant Certificate states that the

warrant holder is entitled to purchase "at any time ... stock ... of Southern Mineral Corporation." Section 3.3 of the Warrant Agreement, in the event of a merger, clearly allows Southern Mineral to alter the benefits received upon the exercise of a warrant to the extent that different securities or assets are provided, but the rights and interests of the Warrant holders with respect to such securities or assets are to be as nearly as may be those under the Warrant Agreement. It is unclear from the plain text of either Section 3.3. or the Warrant Certificates whether transforming the right to receive Southern Mineral stock in perpetuity to a right to receive PetroCorp stock must also be a right exercisable in perpetuity. The Warrant Certificates, on their face, do not deal with this contingency. One fair reading of the provisions suggest that the right in perpetuity could be extinguished upon a transformation of the right to buy Southern Mineral stock into a right to buy PetroCorp stock because the warrant certificate relates to Southern Mineral stock, and states that the right to purchase "at any time" is for Southern Mineral stock. On the other hand, another fair reading of the provisions could also be that the right to buy at any time related to the ability to purchase stock of Southern Mineral or, under the Warrant Agreement, the right to purchase the stock otherwise payable in exchange for the stock of Southern Mineral, and these provisions would apply to any stock issued as a result of a reorganization. Given these two plausible readings, a critical ambiguity exists in the contracts at issue, and summary judgment for either side cannot be granted. Because of this ambiguity it is unnecessary to reach or resolve many of the issues raised by the parties, including, for example, whether the actions by the defendants were in effect to call the warrants, or whether the warrant holders were given the identical rights as Southern Mineral stockholders after the merger was completed.

Moreover, there is significant extrinsic evidence that suggests that ambiguity exists in the Warrant Agreement and that summary judgment would be inappropriate. For example, Southern Mineral has provided evidence that Gary C. Christopher, PetroCorp's President and Chief Financial Officer acknowledged that the warrants at issue were perpetual. (*See* Dep. Of Gary C. Christopher dated Aug. 19, 2002 at 51–52 attached as Exh. C of Aff. Of Timothy Kebbe ("Kebbe Aff.") sworn to December 13, 2002.) On the other hand, PetroCorp has come forward with evidence that the understanding of the Warrant Agreement was that it created perpetual warrants only to the extent there was no liquidation event, such as a merger. (*See, e.g.,* Dep. of Steven H. Mikel dated Sept. 19, 2002 at 43–44 attached as Exh. C to Defts.' Mem. in Opp. to Pls.' Mot. for Summ. J.) This extrinsic evidence underlies the ambiguity in the documents themselves.

The plaintiffs and defendants both rely on a series of cases to support their readings of the Warrant Agreement none of which are directly on point. The plaintiff relies on *Cont'l Airlines Corp. v. Am. Gen. Corp.*, 575 A.2d 1160 (Del.1990). This case determined that, under Delaware law, warrant holders under the warrant agreement at issue in that case were entitled to receive the same consideration that any other corporate shareholder had received in a merger. That proposition is not contested in this case. The defendants do not dispute that the plaintiffs were entitled to the same "bundle of rights" that the Southern Mineral common stockholders received. The issue in this case is whether the effective date applicable to common stockholders can be applied to the warrant holders in view of the agreements in this case.

The warrants in *Cont'l Airlines* were not perpetual and the issue was not discussed.

The defendants rely on *Glinert v. Wickes Co., Inc.*, No. 10407, 1990 WL 34703 (Del.Ch.1990), and *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929 (5th Cir. 1981). *Broad* is inapplicable to the present case, because the case involved a restructuring where the only merger consideration offered to stockholders was cash, and the debenture-holders had no basis to demand an option to exchange their debentures for stock. In the present case, the Southern Mineral stockholders, and for a period of time, the warrant-holders, had the right to obtain PetroCorp stock. *Glinert* is similarly inapplicable, because the warrant-holders in the that case retained their ability to purchase common stock of the company being merged; their breach of contract claims arose from the fact that the class of stock that the warrant-holders were eligible to purchase were devalued due to a reclassification of the types of stock being issued by the surviving company.

None of these cases involved provisions similar to the ones at issue in this case, and did not involve warrants or options that were potentially open for a perpetual period and did not resolve the question of whether the perpetual time period continues after a reorganization. These cases are inapposite to the present case. Consequently, it is unnecessary to resolve the lengthy debate between the parties about the import of these cases.

Therefore the plaintiffs' and the defendants' motions for summary judgment are denied with respect to the breach of contract claims, given the ambiguity present in the Warrant Agreement and the Warrant Certificates.

## V.

Because the plaintiffs are not entitled to summary judgment on the breach of contract claims, they are also not entitled to a declaratory judgment. Consequently, summary judgment on the third cause of action seeking a declaratory judgment is denied.

## VI.

 The plaintiffs also seek summary judgment on their claim for tortious interference of contract. Under Texas law, to establish a claim for tortious interference with contract, the plaintiffs must establish: (1) the existence of a contract subject to interference; (2) willful and intentional interference with that contract; (3) the intentional interference was a proximate cause of plaintiff's damage; and (4) actual damage or loss occurred. *Wardlaw v. Inland Container Corp.*, 76 F.3d 1372, 1375 (5th Cir.1996). Because the Warrant Agreement and the Warrant Certificate are ambiguous, it cannot be said as a matter of law that the defendants willfully and intentionally interfered with the contract rights provided to the warrant-holders. A reasonable interpretation of the contracts suggests that PetroCorp did in fact comply with the terms of the Warrant Agreement when it provided the consideration for the warrant-holders in the Merger Agreement, while an equally plausible and reasonable interpretation of the contracts supports the plaintiffs' position. Given this ambiguity, it cannot be said as a matter of law that the defendants willfully interfered with the ability of the warrant-holders to obtain PetroCorp stock. Consequently, the plaintiffs' motion for summary judgment on this claim is denied.

## VII.

The plaintiffs have also moved for summary judgment on the issue of damages, arguing that this Court should find that the plaintiffs have been damaged in the amount of the fair value of their warrants, which they claim is to be determined by

using the Black–Scholes pricing model. Summary judgment on the issue of damages should not be granted because the plaintiffs' motion for summary judgment on the breach of contract claims is denied. The issue of the method of calculating damages, and the amount of damages, if any, is to be determined at trial. In any event, there are material disputes as to the value of the warrants at the time of the alleged breach. The plaintiffs' motion for summary judgment on damages is therefore denied.

## CONCLUSION

For the reasons explained above, the plaintiffs' motion for summary judgment on their claims for breach of contract, tortious interference with contract, and on the issue of damages, is denied. The defendants' motion for summary judgment on the breach of contract claim is also denied.

**SO ORDERED.**